**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3526
_____

CARLYLE INVESTMENT MANAGEMENT LLC; TC
GROUP LLC; TCG HOLDINGS LLC; DAVID M.
RUBENSTEIN; WILLIAM E. CONWAY, JR.; JAMES H.
HANCE; JOHN C. STOMBER; MICHAEL J. ZUPON;
DANIEL A. D'ANIELLO

v.

MOONMOUTH COMPANY SA; PLAZA MANAGEMENT
OVERSEAS SA; PARBOLD OVERSEAS LTD.; LOUIS
J.K.J. REIJTENBAGH; STICHTING RECOVERY CCC

PLAZA MANAGEMENT OVERSEAS SA,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D. C. No. 1-12-cv-01732)
District Judge:  Honorable Sue L. Robinson
_____

Argued on June 4, 2014

Before:  HARDIMAN, SCIRICA and ROTH, Circuit Judges

(Opinion filed:  February 25, 2015)

Michael F. Bonkowski, Esquire
J. Kate Stickles, Esquire
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Alan Kolod, Esquire          **(Argued)**
Mark N. Parry, Esquire
Moses & Singer
405 Lexington Avenue
New York, NY 10174

Counsel for Appellant

Shannon E. German, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Brian C. Rabbitt, Esquire
Sarah F. Teich, Esquire     **(Argued)**
Robert A. Van Kirk, Esquire
Richard H. Wiegmann, Esquire
Williams & Connolly
725 12th Street, N.W.
Washington, DC 20005

Counsel for Appellees

2

**ROTH**, <u>Circuit Judge</u>:

Defendant Plaza Management Overseas S.A. appeals the District Court's order remanding this case to Delaware Chancery Court pursuant to a forum selection clause in a 2006 contract between one of Plaza's affiliated companies and one of plaintiffs' affiliated companies. For the reasons that follow, we will affirm the judgment of the District Court.

## I.    Background

Plaintiffs are Carlyle Investment Management, L.L.C., a large publicly traded investment management firm; two affiliated entities, TC Group, L.L.C. and TCG Holdings, L.L.C.; three founders and officers of Carlyle, David Rubinstein, Daniel D'Aniello, and William Conway, Jr.; and three Carlyle-affiliated former directors of Carlyle Capital Corporation Ltd. (CCC), James Hance, John Stomber, and Michael Zupon. Defendants are Louis J.K.J. Reijtenbagh; three entities he owns and controls, Plaza, Moonmouth Company S.A., and Parbold Overseas Ltd.; and an affiliated Dutch company, Stichting Recovery CCC. The record indicates that Plaza is the only corporate defendant that has not been dissolved.

CCC was an investment fund incorporated in 2006 in Guernsey, a British Crown dependency in the English Channel. CCC invested primarily in residential mortgage-backed securities issued by Fannie Mae and Freddie Mac. In

December 2006, Moonmouth purchased three million Class B shares of CCC for $60 million under a contract known as the 2006 Subscription Agreement. Only Moonmouth and CCC were parties to the Subscription Agreement. Plaza, in its capacity as director of Moonmouth, signed the Subscription Agreement on Moonmouth's behalf. Plaza and Moonmouth were owned and controlled by Reijtenbagh. Carlyle signed the Subscription Agreement on behalf of CCC as its investment manager. The Subscription Agreement contained the following forum selection clause, which is the subject of this litigation: "The courts of the State of Delaware shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement . . . ." The Subscription Agreement also included a choice of law clause, specifying that Delaware law was to govern.

In March 2008, as the global financial crisis depleted CCC's cash reserves, CCC entered liquidation. A court in Guernsey appointed liquidators (the CCC Liquidators) to oversee liquidation of the company. In July 2010, the CCC Liquidators sued Carlyle and the other plaintiffs in Guernsey for alleged breach of fiduciary duties owed to CCC.

In the fall of 2009, Reijtenbagh sought Carlyle's permission to sell to various third parties portions of investments in Carlyle-affiliated funds that he held through a different investment entity, Bundora Associates Inc. These investments were subject to transfer restrictions, so Reijtenbagh needed Carlyle's approval and assistance to execute the sales. The sales were accomplished through the execution of seven Transfer Agreements between Bundora (through Plaza, its director), several Carlyle affiliates, and the third-party purchasers. Each Transfer Agreement contained a

4

broad and materially identical release under which Bundora and its affiliates released all their then-existing claims against Carlyle and its affiliates. One of the Transfer Agreements, the Carlyle Europe Partners III, L.P. (CEP III) Transfer Agreement, also included a forum selection clause requiring any litigation "relating in any way" to the agreement to be brought in either English courts, Delaware state court, New York state court, or the U.S. District Court for the Southern District of New York.

In June 2012, a Dutch law firm representing Moonmouth sent letters on behalf of Moonmouth, Plaza, Parbold, and Reijtenbagh to plaintiffs and former independent directors of CCC alleging that plaintiffs took "irresponsible and unacceptable risks" in connection with the investments that CCC managed and that they would hold plaintiffs liable for all damages that the investors sustained in connection with their investment in CCC.

In response, plaintiffs filed this action in the Delaware Court of Chancery to enforce the Subscription Agreement's forum selection clause as well as the releases from liability contained in the Bundora Transfer Agreements. Moonmouth, Plaza, and Parbold were served on November 19, 2012. Moonmouth was dissolved a week later, apparently pursuant to the laws of the British Virgin Islands, where it was incorporated.[1] Plaintiffs' amended complaint added a claim alleging that defendants have been providing financial support for the CCC Liquidators' suit in Guernsey against

---

[1] Stichting has also been dissolved though it is not clear when this occurred.

5

Carlyle and its affiliates in breach of the releases in the Bundora Transfer Agreements.

Plaza removed the case to federal court on December 18, 2012. Plaintiffs moved to remand on January 17, 2013. The District Court granted the motion and remanded to state court on August 14, 2013. Plaza appealed.

## II.    Discussion

### A.    Jurisdiction

Carlyle contends that we lack jurisdiction to hear Plaza's appeal. We disagree. Generally, an order "remanding a case to the State court from which it was removed is not reviewable on appeal . . .." 28 U.S.C. § 1447(d). We have recognized an exception to this rule when the remand is not based on the reasons set forth in 28 U.S.C. § 1447(c). *See New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 547 (3d Cir. 2011) (citing *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1210–11 (3d Cir. 1991)). It is well established that a remand pursuant to a forum selection clause does not fall within the reasons for remand listed in § 1447(c). *See id.*; *Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 152 (3d Cir. 2000); *Foster*, 933 F.2d at 1211. Thus, because the District Court remanded due to the forum selection clause and not due to a § 1447(c) reason, we have jurisdiction over the appeal.[2] Plaintiffs argue that the act of mailing the remand order divests a federal court of jurisdiction, citing *Agostini v. Piper Aircraft Corp.*, 729 F.3d

---

[2] A remand to state court is also considered a final order. *Suter*, 223 F.3d at 152.

350, 356 (3d Cir. 2013), and *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995). These cases are easily distinguishable because they involve remands under § 1447(c). A court of appeals, however, retains jurisdiction over appeals of remand orders that are not made pursuant to § 1447(c). Therefore, we have jurisdiction under 28 U.S.C. § 1291.

### B. Standard of Review

The federal removal statute, 28 U.S.C. § 1441, is strictly construed, requiring remand if any doubt exists over whether removal was proper. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The party seeking removal carries the burden of proving that removal is proper. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). That burden is particularly heavy when the party seeks to avoid a forum selection clause through use of removal. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). In addition, in matters of contract construction, we exercise plenary review. *Merrill Lynch*, 640 F.3d at 547.

### C. Merits of the Appeal

#### 1. Whether the Subscription Agreement Forum Selection Clause is Binding

The District Court agreed with plaintiffs that Plaza is bound by the forum selection clause despite not having been a signatory. Delaware courts have set forth a three-part test for determining whether a non-signatory to an agreement should be bound by its forum selection clause: (1) is the forum selection clause valid, (2) is the non-signatory a third-party

7

beneficiary of the agreement or closely related to the agreement, and (3) does the claim at hand arise from the non-signatory's status related to the agreement? *See Baker v. Impact Holding, Inc.*, No. CIVA 4960-VCP, 2010 WL 1931032, at *3 (Del. Ch. May 13, 2010) (citing *Capital Grp. Cos. v. Armour*, No. CIV. A. 422-N, 2004 WL 2521295, at *5 (Del. Ch. Oct. 29, 2004)); *Weygandt v. Weco, LLC*, No. 4056-VCS, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009).

For the first element, forum selection clauses are presumed to be valid. *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010). The clause is considered valid unless the challenging party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Id.* (citation and quotation marks omitted). Plaza challenges the validity of the clause, but it provides no argument that it is invalid for any of those reasons. Plaza's arguments are better characterized as arguments that the clause is inapplicable, rather than invalid. We will address those arguments later in the opinion. At this point, we will focus on whether the forum selection clause is valid.

With respect to the second element, even if defendants are not parties to the agreement or third-party beneficiaries of it, they may be bound by the forum selection clause if they are closely related to the agreement in such a way that it would be foreseeable that they would be bound. *See Weygandt*, 2009 WL 1351808, at *4. In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct

benefit from the agreement. *See id.* at \*4-5; *Capital Grp.*, 2004 WL 2521295, at \*6-7.

The District Court found that Plaza was closely related to the Subscription Agreement. It did not err in doing so. Plaza was Moonmouth's director and it executed the Subscription Agreement on Moonmouth's behalf. Plaza and Moonmouth are affiliated entities that are both owned and controlled by Reijtenbagh. Several provisions of the Subscription Agreement itself indicate the close relationship between Moonmouth, Plaza, and Reijtenbagh. Reijtenbagh is listed as Moonmouth's primary contact person and his address includes "c/o Plaza." He is also listed as a person authorized to give and receive instructions on behalf of Moonmouth. Negotiations related to the Subscription Agreement were conducted by Moonmouth, Plaza, and Reijtenbagh. The Subscription Agreement states that the "source of funds" for Moonmouth's investment in CCC was Plaza's income. Additionally, the letter from the Dutch law firm to the plaintiffs, complaining of losses related to the CCC investment, was sent on behalf of Moonmouth, Plaza, and Reijtenbagh. Thus, we agree with the District Court that the three parties were closely related to the Subscription Agreement.[3]

This result is consistent with Delaware cases in which affiliates, officers, and directors have been held to be bound by forum selection clauses. *See, e.g.*, *Baker*, 2010 WL

---

[3] It is not the case that Plaza is bound merely because it signed the Subscription Agreement as Moonmouth's director. Rather, it is bound because of Plaza's close relationship to the agreement itself.

9

1931032, at *4; *Weygandt*, 2009 WL 1351808, at *5 (foreseeable that multiple entities controlled by same control person would be subject to forum clause).

Plaza contends, however, that plaintiffs lack standing to invoke the forum selection clause because they were not parties to the Subscription Agreement. A non-signatory has standing to invoke a forum selection clause when it is "closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239, 1249 (Del. Ch. 2010). We find that the non-signatory plaintiffs are closely related to CCC so that it would be foreseeable to defendants that they would enforce the clause. All of the corporate plaintiffs are affiliates of Carlyle. CCC was managed by Carlyle at the time the Subscription Agreement was executed. A "Carlyle Group Privacy Statement" was attached to the Subscription Agreement explaining how Carlyle managed the confidentiality and security of information provided by investors for CCC and other Carlyle-affiliated investments. The Subscription Agreement's indemnification provision also extended beyond CCC to Carlyle's officers, directors, employees, agents, and controlling persons. The individual plaintiffs were directors of CCC or senior executives of Carlyle. Furthermore, the letters sent by defendants via Dutch counsel were sent not only to CCC but to the plaintiffs individually. In short, it is clear that plaintiffs are closely related to CCC in such a way that they may enforce the forum selection clause.

The third issue we consider in determining whether the forum clause may be enforced is whether the claims against

10

defendants arise from their status relating to the agreement. *Capital Grp.*, 2004 WL 2521295, at \*5. This question is very similar to the question of whether the forum selection clause applies to this dispute. We answer both questions in the affirmative. The claims in this case are "with respect to"[4] the Subscription Agreement and the claims against defendants therefore arise from the Subscription Agreement.

Courts generally interpret language in a forum clause encompassing any claims "with respect to" an agreement broadly to mean "connected by reason of an established or discoverable relation." *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011) (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001)); *accord John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074-75 (3d Cir. 1997). An action need not even allege contract-based claims in order for a forum selection clause in a contract to be enforced. *See Ashall Homes*, 992 A.2d at 1252 (forum clause applies when claims "grow out of the contractual relationship"); *Crescent Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988). If this were not the rule, a plaintiff could easily avoid a forum selection clause by artfully pleading non-contract claims that stem from the contractual relationship. *See Ashall Homes*, 992 A.2d at 1252; *Crescent Int'l*, 857 F.2d at 945.

This case is similar to *Huffington v. T.C. Group, LLC*, a case from the First Circuit involving some of the same parties as this litigation. There, the plaintiff artfully avoided

---

[4] *Carlyle Inv. Mgmt. LLC v. Plaza Mgmt. Overseas, S.A.*, Civ. No. 12-1732-SLR, 2013 WL 4407685, at \*2 (D. Del. Aug. 14, 2013).

contract claims in his pleadings and did not mention the purchase agreement that contained the forum selection clause. *Huffington*, 637 F.3d at 21. The Court of Appeals nonetheless found the forum clause applicable, noting that none of the claims would have arisen without the original purchase contract. *Id.* at 22.

Here, Carlyle's claims stem from Moonmouth's initial investment in CCC. Although the releases Carlyle seeks to enforce were part of later agreements, the defendants would not have any claims, nor would Carlyle need to seek release from any claims, but for the original Subscription Agreement that contains the forum selection clause. It is clear that the relationship between plaintiffs and defendants, including the letters from defendants' Dutch counsel and plaintiffs' present efforts to be released from any claims, stem from the Subscription Agreement. Thus, the claims are "with respect to" the Subscription Agreement.

### 2. The Forum Selection Clause in the CEP III Transfer Agreement

Carlyle argues that we could also affirm the District Court's remand on the alternative ground that one of the agreements containing a release that Carlyle seeks to enforce also contains an enforceable forum selection clause. We agree. [5]

---

[5] "We may affirm a district court for any reason supported by the record." *Brightwell v. Lehman*, 637 F.3d 187, 191 (3d Cir. 2011) (internal citations omitted).

The CEP III Transfer Agreement's forum clause allows for litigation in English courts, Delaware state court, New York state court, or the U.S. District Court for the Southern District of New York. The clause's reach in terms of parties covered and disputes covered is broader than the forum clause in the Subscription Agreement. It applies to "any Affiliate of any party" to any action or dispute "arising out of or relating in any way" to the agreement. R. at 870a.

Thus, all parties to the CEP III Transfer Agreement agreed that any litigation, including litigation brought by or against their affiliates, relating "in any way" to the agreement, would be brought only in one of the four specified jurisdictions. This included Delaware state court, but did not permit litigation in the U.S. District Court for the District of Delaware. Removal is only permitted when the case could have originally been brought in federal court. 28 U.S.C. § 1441(a); *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). Because the forum selection clause does not designate Delaware federal court as a possible forum, Count I could not have been brought there. Thus, under terms of this clause, which plainly binds defendants as affiliates of signatory Bundora Associates, Inc., Count I is not removable to federal court.

Furthermore, if one claim is not removable due to a forum selection clause, the other claims may not be severed and removed. To hold otherwise would be to invite piecemeal litigation and to allow plaintiffs to circumvent forum selection clauses through artful pleading of additional claims. *See Crescent Int'l*, 857 F.2d at 945

### 3. Plaza's Remaining Arguments

Finally, Plaza contends that plaintiffs are judicially estopped from enforcing the forum selection clause in the Subscription Agreement because their complaint alleges that the Bundora Transfer Agreements released the Subscription Agreement. This argument fails for two reasons.

First, Plaza's characterization of the complaint is inaccurate. As plaintiffs point out, the releases in the Bundora Transfer Agreements released only pre-existing claims. They did not release or terminate the Subscription Agreement itself or its forum selection clause. The amended complaint is clear in pleading that only pre-existing claims stemming from the Subscription Agreement, not the entire agreement itself, were released by the Bundora Transfer Agreement releases. In fact, the amended complaint pleaded that the forum selection clause was valid and enforceable.

Second, the facts here do not meet the elements required for judicial estoppel. The doctrine of judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel requires that: (1) a party adopts a position clearly inconsistent with an earlier position and (2) the party had succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." *Id.* at 750. Here, Plaza fails to show inconsistency because plaintiffs' argument that prior claims were released by the Bundora Transfer Agreements is consistent with their argument that the forum selection clause from the 2006 Agreement remains valid.

14

Plaza also argues that plaintiffs waived their right to move for remand by seeking enforcement of the releases from the Bundora Transfer Agreements which do not have an exclusive forum clause and therefore allow removal. This argument is unavailing for the reasons previously discussed. First, Carlyle's claim regarding the Bundora Transfer Agreements is "with respect to" the Subscription Agreement. Second, one of the Bundora Transfer Agreements, the CEP III Transfer Agreement, contained a forum selection clause prohibiting removal to Delaware federal court. Plaintiffs have not waived their right to seek remand of the case.

## III.    Conclusion

In sum, we agree with the District Court that the forum selection clause in the Subscription Agreement pertains to this case, may be enforced against defendants, and may be invoked by plaintiffs. We also agree with plaintiffs that the forum selection clause in the CEP III Transfer Agreement provides a valid alternative ground supporting remand to state court. We will therefore affirm the District Court's order remanding the case to the Delaware Court of Chancery.