IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JTF AVIATION HOLDINGS INC, et al., *Plaintiffs/Appellants,*

*v.*

CLIFTONLARSONALLEN LLP, *Defendant/Appellee.*

No. 1 CA-CV 18-0530
FILED 7-2-2019

Appeal from the Superior Court in Maricopa County
No. CV2017-003641
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Aiken, Schenk, Hawkins & Ricciardi, PC, Phoenix, AZ
By Joseph A. Schenk, Heather A. Macre
*Co-Counsel for Plaintiffs/Appellants*

Debus, Kazan & Westerhausen, LTD, Phoenix, AZ
By Larry Debus
*Co-Counsel for Plaintiffs/Appellants*

Moss & Barnett, PA, Minneapolis, MN
By Thomas J. Shroyer, Charles E. Jones, Taylor D. Sztainer, Joshua P. Oie
*Co-Counsel for Defendant/Appellee*

Renaud Cook Drury Mesaros PA, Phoenix, AZ
By John A. Klecan
*Co-Counsel for Defendant/Appellee*

---

## OPINION

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1          Jeremy T. Freer and JTF Aviation Holdings, Inc. ("JTF"), appeal the superior court's order that a contractual limitation period barred their claims for professional negligence, negligent misrepresentation, and breach of fiduciary duty. Because only our resolution of the applicability of the contract limitation provision to Freer merits publication, we have addressed Freer and JTF's other arguments in a memorandum decision filed concurrently with this opinion. *See* Ariz. R. Sup. Ct. 111(h). For the following reasons, and for those reasons addressed in our memorandum decision, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2          Freer is the founder, president, and sole shareholder of JTF. In August 2013, CliftonLarsonAllen ("CLA"), a national accounting firm, agreed to provide JTF with a billing, collection, and revenue-cycle analysis. The scope of work was memorialized in an engagement letter dated August 15, 2013. On December 30, 2013, JTF and CLA entered into a second engagement letter (the "December Engagement Letter"), which provided that CLA would audit JTF's consolidated financial statements and perform other non-audit services. In the letter, JTF's management agreed it would be "responsible for the preparation and fair presentation of the financial statements in accordance with [the United States generally accepted accounting principles ("GAAP")]."

¶3          The December Engagement Letter stated that "any Dispute will be governed by the laws of the State of Minnesota, without giving effect to choice of law principles" and included the following provision:

> The parties agree that, notwithstanding any statute or law of limitations that might otherwise apply to a Dispute, any action or legal proceeding by you against us must be commenced within twenty-four (24) months ('Limitation Period') after the date when we deliver our final audit report

under this agreement to you, regardless of whether we do other services for you relating to the audit report, or you shall be forever barred from commencing a lawsuit or obtaining any legal or equitable relief or recovery. The Limitation Period applies and begins to run even if you have not suffered any damage or loss, or have not become aware of the existence or possible existence of a Dispute.

The letter defined "Dispute" as "[a]ny disagreement, controversy, or claim . . . that may arise out of any aspect of [CLA's] services or relationship with [JTF]."

**¶4**        On February 3, 2014, CLA delivered its audit report for 2013 pursuant to the December Engagement Letter. The report was addressed to "Shareholder," i.e., Freer.

**¶5**        In June 2014, Vistria Group, LP ("Vistria"), through its subsidiary Aviation West Charters, LLC, as purchaser, entered an Asset Purchase Agreement with JTF, as seller, along with Freer, as JTF's shareholder, for the sale of substantially all of JTF's assets for $80,000,000, plus assumed liabilities. In the agreement, JTF warranted to Vistria that JTF's financial statements "were prepared in accordance with GAAP consistently applied and present fairly the financial position and results of operations."

**¶6**        In September 2014, Vistria filed a complaint in Delaware state court (the "Delaware Lawsuit") against Freer, JTF, and JTF's chief financial officer, Richard Larson, alleging fraudulent inducement, breach of contract, breach of warranty, breach of good faith and fair dealing, and civil conspiracy. Vistria alleged the defendants fraudulently induced it to purchase JTF at an inflated price because the company financial statements on which it relied did not conform to GAAP. It asserted Freer and Larson inflated JTF's 2013 earnings before interest, taxes, depreciation, and amortization ("EBITDA") to $40,800,000, when in reality, JTF's EBITDA amounted only to $11,000,000.

**¶7**        In September 2016, Vistria settled its claims against Freer and the other defendants in exchange for payment of $4,850,000.

**¶8**        On April 10, 2017, Freer and JTF sued CLA in Maricopa County Superior Court, alleging that professional negligence, negligent misrepresentation, and breach of fiduciary duty by CLA gave rise to the claims against them in the Delaware Lawsuit. In its answer, CLA asserted

that applicable statutes of limitations and contractual limitations periods barred the claims.

**¶9**          On cross-motions for summary judgment, the superior court held that Freer was bound by the 24-month contractual limitations period in the December Engagement Letter, and ruled the limitation provision barred both plaintiffs' claims. Freer and JTF timely appealed.

## DISCUSSION

**¶10**          We review *de novo* the superior court's grant of summary judgment and application of the law. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309–10 (1990). We construe the facts and reasonable inferences in the light most favorable to the opposing party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). "We may affirm a summary judgment even if the trial court reached the right result for the wrong reason." *See Guo v. Maricopa Cty. Med. Ctr.*, 196 Ariz. 11, 15, ¶ 16 (App. 1999).

**¶11**          "[T]he longstanding general rule" in Arizona is "that only parties to a contract are subject to or may enforce its terms." *Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 510, ¶ 7 (App. 2016) (citation omitted). The plaintiffs in *Sierra Tucson* were statutory beneficiaries of an estate who filed a wrongful death action against a hospital with which the decedent had signed a contract that contained a venue selection clause. *Id.* at 509–10, ¶¶ 2–3, 9. They had no control over contracts the decedent entered and no reason to even know of the contract's existence or terms. *See id.* at 510, ¶ 9. Thus, consistent with the general rule, we held that the statutory beneficiaries were not bound by the venue selection clause. *See id.*

**¶12**          In contrast, Freer's claims arise from the December Engagement Letter, by which JTF hired CLA to perform an audit in anticipation of a planned sale of JTF's assets. Freer is the sole shareholder, president, and founder of JTF, and thus the beneficiary of that sale, with the price to be negotiated based on the financial statements CLA was hired to produce. Freer not only knew of the December Engagement Letter, he signed the management representation verifying the financial information JTF provided to CLA, and CLA relied on the accuracy of those financials in performing its audit. Freer directly facilitated CLA's performance of its obligations for JTF under the letter, and those obligations are at the center

of his claims against CLA: that it misrepresented its expertise in the matters for which JTF hired it and breached its fiduciary duty and duty of due care. Thus, Freer's relationship to the December Engagement Letter, his knowledge of its terms, and the relationship of the obligations imposed by the contract to his claim all distinguish the present case from the general rule reiterated in *Sierra Tucson*.

¶13 The superior court held that in light of Freer's role as founder, president, and sole shareholder of JTF, he was bound by the limitations provisions in the December Engagement Letter because his claims cannot be adjudicated without analyzing whether CLA complied with that contract. The court relied on *Manila Indus., Inc. v. Ondova, Ltd. Co.*, 334 F. App'x 821, 823 (9th Cir. 2009), which enforced a forum selection clause against a non-party to an agreement because the plaintiff claimed rights that were covered by the agreement and were "closely related" to it.

¶14 Federal courts have subjected a variety of individuals to forum selection clauses under similar circumstances. *See, e.g., Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (holding that a non-signatory defendant was bound by a contractual forum selection clause); *see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202–03 (3d Cir. 1983) *abrogated on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989). In *Manetti-Farrow*, the plaintiff sued a number of defendants, only one of which had signed the dealership agreement on which the plaintiff's claims were based. 858 F.2d at 511, 514 n.5. The plaintiff argued the forum selection clause applied only to the lone defendant that had signed the dealership contract. *Id.* The Ninth Circuit rejected the plaintiff's argument, reasoning that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)). The court held that all the defendants were bound by the forum selection clause because their conduct giving rise to the claims was "closely related to the contractual relationship." *Id.* This closely-related-party doctrine, as other courts have recognized, requires application of contractual obligations to non-signatories that are entangled with the contract. *See Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (holding non-signatory may enforce a contract when the non-signatory is "closely related" to another signatory); *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) ("[W]here the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.") (internal quotation marks omitted).

5

**¶15**       "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015). Further, in considering whether to apply the closely-related-party doctrine, a court must decide whether "enforcement of the clause by or against the non-signatory would be foreseeable." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 64 (3d Cir. 2018); *see also Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.") (*citing Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5).

**¶16**       Freer argues that *Manetti-Farrow* applies only to third-party beneficiaries of the underlying contract. The reasoning of *Manetti-Farrow* contains no such restriction. 858 F.2d at 514 n.5. And in a later decision, the Seventh Circuit held that although third-party beneficiary status would be sufficient to "satisfy the 'closely related' and 'foreseeability' requirements," a "closely related" party need not be a third-party beneficiary for the rule to apply. *Hugel,* 999 F.2d at 209 n.7. We agree with the Seventh Circuit's analysis in *Hugel* that a non-signatory need not be a third-party beneficiary to fall within a contract's obligations under the closely-related-party doctrine.

**¶17**       Arizona courts have not previously adopted the closely-related-party doctrine. *See Sierra Tucson, Inc.*, 239 Ariz. at 511–12, ¶¶ 17–19 (declining to extend the closely-related-party doctrine in *Manetti-Farrow* to statutory estate beneficiaries). We agree with the *Sierra Tucson* court that the closely-related-party doctrine was not applicable under those circumstances, as discussed *supra* at ¶ 12. We hold, however, that under appropriate circumstances, non-signatory transaction participants may benefit from and be bound by contract terms when the non-signatories are "closely related" to a signatory or the dispute. We agree with the reasoning of the Second Circuit, Seventh Circuit, and Ninth Circuit, as described *supra*, and note that several other states have adopted the closely-related-party doctrine to promote efficient resolution of contract disputes. *See, e.g.*, *Titan Indemnity Co. v. Hood*, 895 So.2d 138, 149, ¶ 52 (Miss. 2004) (binding non-signatory transaction participants to a forum selection clause); *Caperton v. A.T. Massey Coal Co., Inc.*, 690 S.E.2d 322, 347 (W.Va. 2009) (adopting the closely-related-party doctrine).

¶18　　　　The closely-related-party doctrine applies here. Though *Manetti-Farrow*, *Hugel*, and other closely-related-party doctrine cases typically address forum selection clauses, the same reasoning applies to the limitation provision in the December Engagement Letter. The limitation provision, along with other terms of the December Engagement Letter, promote efficient resolution of disputes while preserving an appropriate avenue for dispute resolution. The application of the 24-month limitation period to Freer's claims arising out of the contractual relationship between JTF and CLA would not have precluded Freer from pursuing those claims. Instead, it merely required him to bring his claims within 24 months after the completion of CLA's report. For the reasons cited above, we conclude that Freer is so "closely related" to the contract or its signatories that enforcement of the contract terms was "foreseeable." As the superior court observed, Freer owns JTF and his claims against CLA arise out of and relate directly to the December Engagement Letter between JTF and CLA. *See Carlyle Inv. Mgmt.*, 779 F.3d at 219 ("In determining whether a non-signatory is closely related to a contract, courts consider [*inter alia*] the non-signatory's ownership of the signatory . . . .").

¶19　　　　By way of example, Freer's negligent misrepresentation claim alleged CLA misrepresented:

> (1) it was qualified and capable of performing an analysis of [JTF]'s historic collection and revenue percentages and converting [JTF] from a modified accrual basis of accounting to a full accrual basis; (2) it was qualified and capable of preparing complete and accurate draft 2013 financial statements and accompanying notes and adjusting journal entries; (3) it was qualified and capable of performing an independent and unbiased audit of [JTF]'s 2013 financial statements in compliance with U.S. GAAS [*sic*], despite having performed consulting services for [JTF] on the very same control systems and procedures that it would be auditing; (4) it was qualified and capable of detecting and reporting material misstatements in [JTF]'s financial statements and weaknesses in [JTF]'s bookkeeping and accounting practices; and (5) [JTF]'s 2013 audited financial statements had been prepared in accordance with GAAP.

Freer went on to allege that he "relied upon the false information . . . and engaged CLA" to perform certain services.

¶20 In short, the crux of Freer's allegations is that CLA negligently misrepresented its qualifications and capabilities so that Freer and JTF would engage CLA to perform the audit, and that CLA's audit was not prepared in accordance to GAAP. Tellingly, Freer alleged his claim against CLA "stems from actions taken by CLA in performing audit and other accounting work on behalf of its client, JTF."

¶21 We hold that Freer's allegations are closely related to the contractual relationship between JTF and CLA. Moreover, enforcement of the limitation provision was foreseeable to Freer because of his close relationship to JTF and his involvement in the conduct of the contract. Accordingly, Freer is bound by the terms of the December Engagement Letter.

## CONCLUSION

¶22 For the foregoing reasons and those in our related memorandum decision, we affirm entry of judgment against Freer.



AMY M. WOOD • Clerk of the Court
FILED: AA