IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**JTF AVIATION HOLDINGS INC, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**CLIFTONLARSONALLEN LLP,**
*Defendant/Appellee.*

No. CV-19-0209-PR
Filed September 18, 2020

Appeal from the Superior Court in Maricopa County
The Honorable Daniel G. Martin, Judge
No. CV2017-003641
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
247 Ariz. 78 (2019)
**VACATED**

COUNSEL:

Larry L. Debus, Debus & Kazan Ltd, Phoenix; and Joseph A. Schenk, Heather A. Macre, Fennemore Craig PC, Phoenix, Attorneys for JTF Aviation Holdings Inc and Jeremy T. Freer

Thomas J. Shroyer, Joshua P. Oie, Charles E. Jones, Taylor D. Sztainer, Moss & Barnett PA, Minneapolis, MN; and John A. Klecan, Kelly A. Hedberg, Renaud Cook Drury Mesaros PA, Phoenix, Attorneys for CliftonLarsonAllen LLP

Cameron C. Artigue, Lane R. Conrad, Gammage & Burnham PLC, Phoenix, Attorneys for Amicus Curiae Arizona Society of Certified Public Accountants

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, GOULD, LOPEZ, and BEENE joined.

———————————

JUSTICE MONTGOMERY, opinion of the Court:

¶1        The sole issue before us is whether the court of appeals erred by concluding that a contractual limitations [1] provision can preclude nonparties to the contract from asserting tort claims that do not arise out of the contractual relationship.   To reach its conclusion, the court relied on the "closely related party doctrine," which looks to the relationship between a nonparty and parties to the agreement, as well as the relationship between a nonparty and the agreement itself.   No Arizona court has previously adopted this doctrine to impose a contractual limitations provision on a nonparty—nor has any other court for that matter—and we decline to do so now.   Therefore, we hold that the court of appeals erred in binding a nonparty to a contractual limitations provision based on the closely related party doctrine (the "Doctrine").

**I.**

¶2        CliftonLarsonAllen ("CLA") is a Minnesota limited liability partnership operating as a national accounting firm with offices across the United States, including one in Maricopa County.   Jeremy T. Freer ("Freer") is the founder, President, and sole Shareholder of JTF Aviation ("JTF"), which is a Colorado corporation with its principal place of business in Maricopa County. [2]

¶3        JTF engaged CLA to audit JTF's consolidated financial statements and perform certain non-audit services.   The purpose was to provide an objective opinion as to whether JTF's consolidated financial

———————————

[1] Although the provision at issue is one of "repose," the parties and the courts below consistently labeled it a limitations provision.   We therefore use limitations, as well.

[2] JTF Aviation previously conducted business as Aviation West Charters, Inc. dba Angel MedFlight.   We use the current corporate name for clarity.

statements were fairly presented, in all material respects, in conformity with generally accepted accounting principles in the United States ("GAAP"). The parties memorialized their agreement in a letter drafted by CLA dated December 30, 2013 ("Engagement Letter"). The signatories to the Engagement Letter were Chad Kunze, a principal with CLA, and JTF's Chief Financial Officer, Dick Larson.

¶4　　　　Among various provisions, the Engagement Letter included the following language:

> The parties agree that, notwithstanding any statute or law of limitations that might otherwise apply to a Dispute, any action or legal proceeding by you against us must be commenced within twenty-four (24) months ("Limitation Period") after the date when we deliver our final audit report under this agreement to you, regardless of whether we do other services for you relating to the audit report, or you shall be forever barred from commencing a lawsuit or obtaining any legal or equitable relief or recovery. The Limitation Period applies and begins to run even if you have not suffered any damage or loss, or have not become aware of the existence or possible existence of a Dispute.

In February 2014, CLA delivered its Independent Auditors' Report on JTF's consolidated financial statements for the year ending December 31, 2013.

¶5　　　　In June 2014, JTF and Freer entered into an Asset Purchase Agreement with Vistria Group, LP ("Vistria") for $80,000,000, plus assumed liabilities. In the agreement, JTF warranted to Vistria that JTF's financial statements "were prepared in accordance with GAAP consistently applied and present fairly the financial position and results of operations."

¶6　　　　In September 2014, Vistria sued Freer, JTF, and JTF's chief financial officer, alleging that the defendants fraudulently induced it to purchase JTF at an inflated price because JTF's financial statements did not conform to GAAP. Vistria asserted that Freer and Larson inflated JTF's 2013 earnings before interest, taxes, depreciation, and amortization to $40,800,000, when they were only $11,000,000. In September 2016, Freer and the other defendants settled Vistria's claims for $4,850,000.

¶7          On April 10, 2017, well past the twenty-four months since CLA provided its Independent Auditors' Report, Freer sued CLA.[3]   Freer alleged professional negligence, negligent misrepresentation, and breach of fiduciary duty by CLA, which gave rise to Vistria's claims against Freer. In its answer, CLA raised several defenses, including that Freer's "purported claims are barred by applicable statutes of limitations, and contractual limitations periods" and that "[s]ome or all of [Freer's] purported claims are barred by the terms of the . . . Engagement Letter."

¶8          Freer sought partial summary judgment with respect to the limitations defenses raised by CLA.   In turn, CLA asserted in a cross-motion for summary judgment that the limitations terms in the Engagement Letter barred Freer's claims.   Freer responded that the terms of the Engagement Letter did not apply to him because he did not sign the agreement and was not a party to it.

¶9          The trial court granted CLA's motion and entered judgment on its behalf.   Though acknowledging that Freer never signed the Engagement Letter, the court ruled he was bound by its terms given how "closely related" he was to JTF, to the relationship between CLA and JTF, and to the Engagement Letter.   To support its decision, the court cited the Ninth Circuit's opinion in *Manila Indus., Inc. v. Ondova, Ltd. Co.*, 334 F. App'x 821, 823 (9th Cir. 2009) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)), which enforced a forum selection clause against a nonparty to an agreement because the nonparty's alleged conduct was so "closely related" to the contractual relationship.

¶10          Freer appealed, arguing that because he was not a party to the agreement the trial court erred in granting summary judgment for CLA. CLA responded that the trial court's imposition of the limitations provision to Freer should be upheld given Freer's ownership of JTF and that Freer's claims are "closely related" to the contractual relationship established by the Engagement Letter.

¶11          The court of appeals affirmed, *JTF Aviation Holdings Inc., v. CliftonLarsonAllen LLP*, 247 Ariz. 78, 79 ¶ 1 (App. 2019), also applying the

---

[3] JTF is also a party to the underlying lawsuit and referenced pleadings but is not a part of this appeal.

Doctrine and likewise looking to Freer's ownership of JTF, his relationship to JTF and CLA, his involvement in the negotiations between them, as well as whether he received a direct benefit from the agreement. *Id.* at 82 ¶ 15 (citing *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)). The court also took into account "whether 'enforcement of the clause by or against the non-signatory would be foreseeable.'" *Id.* (quoting *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 64 (3d Cir. 2018)). Accordingly, the court "conclude[d] that Freer is so 'closely related' to the contract or its signatories that enforcement of the contract terms was 'foreseeable.'" *Id.* ¶ 18.

**¶12**         We granted review to address whether Arizona courts should adopt the Doctrine and apply it to impose a contractual limitations provision on nonparties to a contract. This is a matter of first impression, and the Doctrine's application to contractual rights and obligations is a matter of statewide importance. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution.

## II.

**¶13**         Freer urges that he cannot be bound by the contractual limitations term in the Engagement Letter because he did not sign it and was not a party to it. CLA argues that the Doctrine, while not previously applied in Arizona, is nonetheless "consistent with Arizona law and is well-accepted in other jurisdictions" and that the facts of the case support applying the limitations provision to Freer.

**¶14**         "We review a grant of summary judgment de novo." *Teufel v. Am. Family Mut. Ins.*, 244 Ariz. 383, 385 ¶ 10 (2018). We also review issues of law arising out of a contract de novo. *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 367 ¶ 12 (2017). "[W]hether a nonparty is bound by [a contract term] is properly resolved by the [C]ourt as a matter of law." *Duenas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, 138 ¶ 23 (App. 2014).

### A.

**¶15**         "The closely related doctrine developed in the federal courts as a matter of federal common law." *Peterson v. Evapco, Inc.*, 188 A.3d 210, 229 (Md. Ct. Spec. App. 2018) (citing *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 407 n.11 (3d Cir. 2017)). The Seventh Circuit has offered that one

reason for the Doctrine's development is to preclude signatories to a contract from utilizing nonsignatory affiliates to circumvent forum selection clauses. *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439–441 (7th Cir. 2012). Federal courts determining whether to apply the Doctrine consider factors that focus on "the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Carlyle*, 779 F.3d at 219.

## B.

**¶16** We note at the outset that the cases cited here by both courts to reach their respective conclusions in applying the Doctrine all address enforcement of a forum selection clause. *JTF Aviation*, 247 Ariz. at 81–82 ¶¶ 13–15. The contractual provision before us, though, is a provision limiting *when* a claim may be brought, not *where* it may be brought. Notably then, while CLA's assertion that the Doctrine is well-accepted in other jurisdictions is true, it has only been accepted for a different and more limited purpose than what is proposed here.

**¶17** The only published Arizona case to review the Doctrine is *Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507 (App. 2016). The court was "urge[d] . . . to adopt the reasoning of 'several other courts' purportedly finding forum selection clauses 'can apply to non-signatories . . . if the claims are closely related to the agreement'" in a case considering whether a venue selection provision was binding on surviving beneficiaries in a wrongful death suit. *Id.* at 511 ¶ 16. The court concluded that "[n]one [of the cases cited] convince us we should abandon the general rule that only parties to a contract are bound by its terms." *Id.* (citing *Treadway v. W. Cotton Oil & Ginning Co.*, 40 Ariz. 125, 138 (1932)).

**¶18** Nonetheless, there are other theories available to bind nonsignatories to the terms of a contract as amici Arizona Society of Certified Public Accountants ("ASCPA") notes in citing *Duenas Life Care Ctrs. of Am., Inc.*[4] The *Duenas* court, in determining whether to enforce an arbitration agreement against nonparties, listed "incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable

---

[4] CLA also notes the same theories, citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003).

estoppel, and third-party beneficiary." 236 Ariz. at 139 ¶ 26 (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003)). *See also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citation omitted) (noting that "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel'"); *Smith v. Pinnamaneni*, 227 Ariz. 170, 177 ¶ 23 (App. 2011) (stating that "[n]onsignatories, however, can be required to arbitrate under certain circumstances" and citing to cases espousing the same theories as in *Duenas*). As ASCPA further acknowledges, "[t]hese . . . theories are not analytically distinct. They are a toolbox that courts can use to get at the essential justice of each case." The Doctrine, however, is not among the tools listed.

## C.

¶19 CLA views the Doctrine as consistent with Arizona law. But there are important distinctions regarding how the Doctrine treats the corporate form. For example, "courts consider the non-signatory's ownership of the signatory" for purposes of determining whether to impose a contract's terms on a nonsignatory under the Doctrine. *Carlyle*, 779 F.3d at 219; *see also In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d at 62–63 (considering ownership relationship between nonparties and a party to the agreement to determine whether to impose contract term). The existence of an ownership relationship may be significant for purposes of precluding a party from circumventing a forum selection clause, but applying the Doctrine in a case like this places too much emphasis on Freer's ownership of JTF and minimizes the importance of the corporate form recognized by Arizona law.

¶20 Arizona law is clear that the "corporate status will not be lightly disregarded." *Chapman v. Field*, 124 Ariz. 100, 102 (1979); *see also Mod. Pioneers Ins. Co. v. Nandin*, 103 Ariz. 125, 130 (1968) ("The concept of a corporation as a separate entity is a legal fact [,] not a fiction."); *Hidalgo v. McCauley*, 50 Ariz. 178, 183 (1937) ("Even when all the stock is owned by a sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons."). Yet the weight the Doctrine gives to the fact of ownership effectively functions to pierce the corporate veil or establish that an entity is the alter ego of an individual. To pierce the corporate veil or succeed in an alter ego claim, neither of which CLA has sought to do,

requires more under Arizona law than proof of the existence of an ownership relationship.

**¶21** "A corporate entity will be disregarded, and the corporate veil pierced, only if there is sufficient evidence that 1) the corporation is the 'alter ego or business conduit of a person,' and 2) disregarding the corporation's separate legal status is 'necessary to prevent injustice or fraud.'" *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214 ¶ 30 (App. 2010) (internal citations omitted). To establish that a corporation is the alter ego of an individual, a plaintiff must present "substantial evidence of intermingling of corporate and personal assets, affairs or funds, or that the corporate structure was in any way used for other than legitimate corporate purposes." *Chapman*, 124 Ariz. at 103 (quoting *Ferrarell v. Robinson*, 11 Ariz. App. 473, 476 (1970)). These factors call for more analysis of the entities or individuals in question than what is considered in applying the Doctrine. *See supra* ¶ 15.

**¶22** The importance of the corporate form and the protections afforded it as provided by Arizona law weigh heavily against adopting the Doctrine, which was developed for a different purpose and in a different context than presented here.

### III.

**¶23** While the Doctrine has been accepted by other jurisdictions to impose forum selection clauses on nonsignatories, we decline to adopt it here. The availability of other avenues for determining whether a nonsignatory should be bound by the terms of an agreement renders adoption unnecessary. Additionally, the ability for a party to negotiate terms to delineate contractual duties and obligations provides further options. Here, for example, if CLA had wished to bind Freer to the Engagement Letter, it could have stated so in the Letter and had Freer sign it in his personal capacity. Regardless, we do not express an opinion as to whether the limitations provision may be applicable based on any other theory.

### IV.

¶**24**        We vacate the opinion of the court of appeals, and we reverse the decision of the superior court and remand for proceedings consistent with this opinion.