# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TECHVIEW INVESTMENTS LIMITED and PRIME OVERSEAS INVESTMENTS AND ENTERPRISES LIMITED | ) ) ) ) | |
| | ) | C.A. No. N20C-11-229 EMD CCLD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMSTAR POLAND PROPERTY FUND I, L.P., AMSTAR POLAND PROPERTY FUND I GP, L.P., AMSTAR POLAND FUND I GP, L.P., AMSTAR GLOBAL PARTNERS LIMITED, and AMSTAR GROUP, LLC, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 14, 2021
Decided: August 31, 2021

*Upon Defendants Amstar Poland Property Fund I, L.P., Amstar Poland Property Fund I, GP, L.P's and Amstar Global Partner Limited's Motion to Dismiss*
***GRANTED***

*Upon Defendant Amstar Group, LLC's Motion to Dismiss*
***GRANTED***

Kenneth J. Nachbar, Esquire, Ryan D. Stottmann, Esquire, Miranda N. Gilbert, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware, Michael B. Carlinsky, Esquire, David E. Myre, Esquire, Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, *Attorneys for Plaintiffs.*

A. Thompson Bayliss, Esquire, E. Wade Houston, Esquire, Abrams & Bayliss LLP, Wilmington Delaware, *Attorneys for the Defendants Amstar Poland Fund I, L.P., Amstar Poland Fund I, GP, L.P and Amstar Global Partner Limited.*

A. Thompson Bayliss, Esquire, E. Wade Houston, Esquire, Abrams & Bayliss LLP, Wilmington, Delaware, Emily L. Wasserman, Esquire, Davis Graham & Stubbs LLP, Denver, Colorado, *Attorneys for Defendant Amstar Group, LLC.*

**DAVIS, J.**

# I. INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. This litigation involves a real estate development transaction (defined below as the "Zlota 44 Project"). Plaintiffs Techview Investments Limited ("Techview") and Prime Overseas Investments and Enterprises Limited ("Prime Overseas") (collectively "Plaintiffs") allege that Defendants Amstar Poland Property Fund I, L.P. ("Amstar Poland Fund"), Amstar Poland Property Fund I, GP, L.P. (the "Former GP"), Amstar Poland Fund I GP, L.P. ("Amstar Poland Fund GP"), Amstar Global Partners Limited ("Amstar Global"), and Amstar Group, LLC ("Amstar Group")[1] fraudulently induced Plaintiffs into investing in Amstar Poland Fund. Plaintiffs also allege that Amstar Poland Fund GP, Amstar Global and Amstar Group acted with gross negligence when: (i) obtaining financing for the Zlota 44 Project; and (ii) managing the Zlota 44 Project. Plaintiffs also allege that those defendants acted grossly negligent by mismanaging arbitration costs.

Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global moved to dismiss all claims (the "Amstar Motion") on January 1, 2021. Amstar Group separately moved to dismiss all claims against it (the "Amstar Group Motion") on April 6, 2021. The Court held a hearing on both motions on May 14, 2021. At the conclusion of the hearing, the Court took the matters under advisement

This is the Court's decision on the motions. For the reasons set forth more fully below, the Court **GRANTS** the Amstar Motion and the Amstar Group Motion.

---

[1] The Court will collectively refer to Amstar Poland Fund, the Former GP, Amstar Poland Fund GP, Amstar Global and Amstar Group as the "Amstar Defendants."

## II.   RELEVANT FACTS[2]

### A. THE PARTIES

Techview was originally a Bahamas corporation.[3]  On or about December 30, 2015, Techview ceased to be a Bahamas corporation and registered as a corporation in the British Virgin Islands.[4]  Prime Overseas is a Cyprus LLC.[5]  Both plaintiffs are limited partners in Amstar Poland Fund.[6]

The defendants hold themselves out as part of "Amstar," an investment firm.[7]  Amstar Poland Fund is a Cayman Islands limited partnership.[8]  The Former GP was Amstar Poland Fund's general partner until November 2015, and was a Cayman Islands limited partnership.[9] Amstar Poland Fund GP has been Amstar Poland Fund's general partner since November 2015, and is a Cayman Islands limited partnership.[10]  Amstar Global is a Bermuda limited company.[11] Amstar Global is one of the two primary divisions at the global "Amstar Group, LLC."[12]  Amstar Global acts as the investment manager for Amstar Poland Fund.[13]  Amstar Group is a Colorado LLC with its principal place of business in Colorado.[14]

---

[2] Unless otherwise indicated, the following facts are as alleged in the Complaint. For purposes of the Motion, the Court must view all well-pled facts alleged in the Complaint as true and in a light most favorable to the Plaintiffs. *See e.g. Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[3] Compl. ¶ 17.
[4] *Id.*
[5] *Id.* ¶ 18.
[6] *Id.* ¶ 19.
[7] *Id.* ¶ 1.
[8] *Id.* ¶ 20.
[9] *Id.* ¶ 21.
[10] *Id.* ¶ 22.
[11] *Id.* ¶ 23.
[12] *Id.*
[13] *Id.*
[14] Unsworn Decl. of Faraz Shahid Supp. Amstar Colorado's Mot. to Dismiss under Rule 12(b)(2) ¶ 6.

**B. THE ZLOTA INVESTMENT PRESENTATION**

In July 2014, Plaintiffs received an "Investment Management Presentation" (the "Zlota Investment Presentation) offering the opportunity to invest in Amstar Poland Fund.[15]  The Zlota Investment Presentation described how "Amstar" secured an opportunity to acquire and complete Zlota 44, a 54-story luxury residential tower in Warsaw, Poland (the "Zlota 44 Project").[16]

The Zlota Investment Presentation often referred to "Amstar."  The Zlota Investment Presentation contained a disclaimer noting that "Amstar" referred to both Amstar Advisers LLC and Amstar Group:

> Except as otherwise noted, the term "Amstar" as used throughout this presentation refers collectively to Amstar Advisers, LLC and its affiliates.  Amstar Group, LLC was formed in 1987 to invest and manage the reale state allocation of a large family office client.  Amstar Advisers, LLC was formed in 2010, and became a registered investment adviser with the U.S. Securities and Exchange Commission (the "SEC") in 2011, to manage the real estate portfolios of unaffiliated, third-party clients.  Additionally, Amstar Group, LLC became a client of Amstar Advisers, LLC as of January 1, 2013.  Amstar Advisers, LLC and Amstar Group, LLC have historically shared the same investment management approach, invested in the same types of real estate properties and shared the same premises, personnel and processes, therefore these entities are collectively referred to as "Amstar."  For the avoidance of doubt, statements within this presentation that refer to the statistics, history, employees, offices or other resources of "Amstar" refer to the collective statistics, history, employees, offices or other resources of Amstar Advisers, LLC and its affiliates; these statements do not refer to any one of these entities independent from the others.[17]

The Zlota Investment Presentation listed Jason M. Lucas, the "President – Amstar Global Advisers" as the contact person for potential investors.[18]  The Zlota Investment Presentation also listed several members of management including Gabe L. Find (the "General Partner and Chief

---

[15] Compl. ¶ 31.
[16] *Id.* ¶ 32.
[17] The Fund, the Fund GP, and Amstar Bermuda's Op. Br. in Supp. of their Mot. to Dismiss (Amstar Mot. Op. Br.) Ex. A (the "Zlota Investment Presentation") at 2.
[18] Compl. ¶ 33.

Executive Officer" of "Amstar"); Gerry R. Moran "Managing Director/Chief Financial Officer"

of "Amstar"); Gerry R. Moran ("Managing Director/Chief Financial Officer of Amstar

Advisers"); Ulf Pettersson (the "Director of Development and Construction" at "Amstar");

Mathieu de Brun ("Managing Director" responsible for "overseeing the operational activities of

Amstar in Ukraine"); Ryan Mathison ("Director of Amstar Global Partners"); and Norman M.

Glazer (a "Senior Analyst" at "Amstar").[19]

The Zlota Investment Presentation made several statements including:

- The development was already "90% constructed" and required just "12-15 months to complete;"

- There was an "Expected Completion Date" of "4Q 2015;"

- "Amstar's development, technical, and financial professionals have prior experience in Central & Eastern Europe (including Poland) and are familiar with the market environment;"

- BBI, a co-investor with Amstar, was a "best-in-class, publicly listed local developer and specializes in high-end residential and mixed-use projects in prime locations throughout Warsaw," and was "expected to take a strong role in day-to-day management of a number of aspects of the development including construction management, permitting and permissions, lobbying with governmental bodies and utility companies and sales;" and

- While there were "negotiations" between Orco and "the previous general contractor about the settlement of a dispute regarding outstanding construction payment," Orco had purportedly agreed to "provide Amstar with financial guarantees (partially secured by money in escrow and partially via a corporate guarantee) for any residiual claim arising from this issue up to an amount of € 20 million." No further details were shared about the nature or status of this pending issue.[20]

---

[19] *Id.*
[20] *Id.* ¶ 37.

5

The Zlota Investment Presentation included detailed information about the project costs and the expected return on investment.[21] A further "Project Sensitivity Analysis" in the Zlota Investment Presentation stated that "Amstar net investor returns" ranged from 10.8% to 56.6%.[22]

## C. PLAINTIFFS INVEST IN THE ZLOTA 44 PROJECT.

Techview agreed to invest €10 million in Amstar Poland Fund.[23] Techview executed a Subscription Agreement, Investor Questionnaire, and Side Letter dated September 25, 2014.[24] Techview and the Amstar Poland Fund entered into the Amended and Restated Limited Partnership Agreement (LPA) dated July 29, 2014.[25]

Prime Overseas also agreed to invest €5 million in Amstar Poland Fund to pursue the Zlota 44 Project.[26] Prime Overseas also executed a Subscription Agreement, Investor Questionnaire, and Side Letter.[27] Prime Overseas and Amstar Poland Fund entered into the LPA.[28]

The Subscription Agreements contain anti-reliance provisions:

*No Other Information:* Other than as provided in this Subscription Agreement, the Partnership Agreement and any other separate agreement in writing with the fund executed in conjunction with the Investor's subscription for Interests, the Investor is not relying upon any other information (including any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio, and any seminars or meetings whose attendees have been invited by any general solicitation or advertising), representation or warranty by any Covered Person in determining to invest in the Fund . . .[29]

The Subscription Agreements define Covered Person:

---

[21] *Id.* ¶ 38.
[22] *Id.* ¶ 39.
[23] *Id.* ¶ 41.
[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 42.
[27] *Id.*
[28] *Id.*
[29] Amstar Mot. Op. Br. Ex. B ("Techview Subscription Agreement") at 3; Ex. C ("Prime Overseas Subscription Agreement") at 3.

"Covered Persons" means the Fund, any Parallel Funds, the GP, the general partners of any Parallel Fund, the Investment Manager, their respective affiliates and their respective partners, members, directors, officers, employees, agents and representatives.[30]

The Subscription Agreement also contains a forum selection provision:

To the fullest extent permitted by applicable law, any action or proceeding between the parties relating in any way to this Subscription Agreement or the Partnership Agreement will be brought and enforced in **the courts of the State of Delaware or the United States District Court for the District of Delaware** and, to the extent permitted by applicable law, the parties irrevocably submit to the jurisdiction of these courts in respect of any such action or proceeding.[31]

The Subscription Agreements were signed by the Former GP.[32]

The LPA contained a liability limiting provision:

The General Partner shall be liable for all debts and obligations of the Partnership to the extent that the Partnership's assets are insufficient to discharge the same; provided, that to the fullest extent permitted by law, none of the General Partner, the Investment Manager, members of the Investment Committee, their Affiliates (including the General Partner but excluding any Parallel Fund or any Successor Fund), nor any of their respective partners, officers, members, managers, shareholders, directors, employees, agents and sub-advisors (each, an *"Indemnified Part"*), shall be liable to the Partnership or to any Limited Partner for (i) any act or omission taken or suffered by such Indemnified Party in connection with the conduct of the affairs of the Partnership or otherwise in connection with this Agreement or the matters contemplated herein, except to the extent that the resulting loss, cost or damage resulted from fraud, intentional misconduct, Gross Negligence, a material violation of applicable securities laws or willful and material breach of this Agreement by such Indemnified Party or (ii) losses due to the negligence, dishonesty or bad faith of any broker or other agent of the Partnership except to the extent that the resulting loss, cost or damage resulted from such Indemnified Party's selection of such broker or agent with Gross Negligence.[33]

---

[30] *Id.* at 1; Prime Overseas Subscription Agreement.
[31] *Id.* at 11.
[32] *Id.* at 14.
[33] Amstar Mot. Op. Br. Ex. D ("LPA") § 4.3.1.

**D. THE AMSTAR DEFENDANTS FIND IT DIFFICULT TO OBTAIN THE NECESSARY FINANCING FOR THE ZLOTA 44 PROJECT.**

Obtaining debt financing was a "key milestone" for developing the Zlota 44 Project.[34] The Amstar Defendants failed to obtain the required debt financing.[35] The Amstar Defendants did not disclose that obtaining such debt may come at a significant cost, despite their purported significant experience and familiarity with the Polish market environment.[36]

On October 14, 2014, Amstar Poland Fund circulated a presentation stating that there was an executed term sheet with PEKAO SA, a reputable Polish bank, for the required financing.[37] The presentation stated that the debt financing would be approved in mid-October.[38]

By March 23, 2015, Amstar Vice President Jeffrey Stronger had written an email disclosing that the Amstar Defendants had not obtained debt financing.[39]

On April 8, 2015, Mr. Stronger further assured Plaintiffs that debt financing was in the works.[40] Mr. Stronger outlined the details of a purported debt proposal from Blackstone and confirmed that Amstar Poland Fund GP intended to close within 60 days.[41]

On May 28, 2015, Plaintiffs learned that Blackstone declined to provide the financing.[42]

The Amstar Defendants ultimately sought additional funds by obtaining a Preferred Equity Facility through which existing investors would receive a preferred equity position to be

---

[34] Compl. ¶ 47.
[35] *Id.* ¶ 48.
[36] *Id.* ¶ 49.
[37] *Id.* ¶ 50.
[38] *Id.*
[39] *Id.* ¶ 51.
[40] *Id.* ¶ 52.
[41] *Id.*
[42] *Id.* ¶ 53.

repaid at a rate of 12% per annum.[43]  Plaintiffs repeatedly implored the Amstar Defendants to restructure the terms of the Preferred Equity Facility and the Defendants refused to do so.[44]

### E. THE AMSTAR DEFENDANTS MISMANAGE PROJECT TIMELINES AND COSTS.

On June 8, 2018, nearly three years after their investment, Plaintiffs learned that the Zlota 44 Project was only 70% complete when they invested.[45]  The Zlota Investment Presentation also stated that the timeline to complete construction was 12-15 months.[46]  The presentation disclosed that the party selling the development, Orco, was negotiating a dispute settlement with a previous general contractor INSO, but failed to disclose the significant and material impact the settlement negotiations were expected to have on the project timeline.[47]  The presentation also represented that Orco provided Amstar with guarantees that were not provided by Orco.[48]

INSO insisted that it would only resolve the Orco dispute if the Amstar Defendants agreed to install INSO as the general contractor for the continued Zlota 44 Project.[49]  The Amstar Defendants hired INSO as the general contractor.[50]

INSO  had several failures as general contractor including:

- Failing to timely hire designers leading to an initial three-month delay of the project;

- Failing to assign sufficient staff with sufficient authority, competence and willingness to make the required decisions;

- Failing to timely issue execution designs;

- Not hiring or mobilizing subcontractors on a timely basis;

---

[43] *Id.* ¶ 54.
[44] *Id.* ¶ 59.
[45] *Id.* ¶ 66.
[46] *Id.* ¶ 67.
[47] *Id.*
[48] *Id.*
[49] *Id.* ¶ 70.
[50] *Id.* ¶ 71.

- Not following the agreed top-down approach for the sequence of execution of works; and

- Not timely performing its duties on various elements of the project.[51]

Amstar Poland Fund canceled the INSO contract in September 2015.[52] Subsequently, Amstar Poland Fund became embroiled in lengthy arbitration with INSO.[53]

Plaintiffs also allege that the Amstar Defendants failed to appropriately manage this arbitration.[54] For example, the Amstar Defendants failed to obtain any cost estimate before commencing proceedings and the sole estimate provided to Plaintiffs was significantly lower than the expenses actually incurred.[55]

### F. PROCEDURAL POSTURE

Plaintiffs filed their initial complaint on December 1, 2020 seeking recovery (i) against all defendants for fraudulent inducement into the Subscription Agreements and LPA and (ii) against Amstar Poland Fund Property Fund GP, the Former GP, Amstar Global and Amstar Group for gross negligence in managing the Zlota 44 Project.[56]

Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global filed the Amstar Motion on January 25, 2021 seeking to dismiss the Complaint on all counts.[57] Amstar Group also filed the Amstar Group Motion seeking to dismiss all counts against Amstar Group based on lack of personal jurisdiction and all counts substantively on April 6, 2021.[58] Plaintiffs oppose both motions.

---

[51] *Id.* ¶ 75.
[52] *Id.* ¶ 76.
[53] *Id.*
[54] *Id.* ¶ 82.
[55] *Id.*
[56] D.I. No. 1.
[57] D.I. No. 12.
[58] D.I. No. 22

10

## III.    PARTIES' CONTENTIONS

### A. THE AMSTAR MOTION

Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global argue that the fraudulent inducement claim is (i) time-barred, (ii) barred by the contract and (iii) alleges fraud with insufficient specificity and challenges statements upon which the Plaintiffs could not justifiably rely.  Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global also contend that the Court does not have subject-matter jurisdiction over the gross negligence claim. According to Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global, the gross negligence claim is a breach of fiduciary duty claim, over which the Court of Chancery has subject-matter jurisdiction.

Additionally, Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global argue that Amstar Bermuda owed no duty to Plaintiffs.  Furthermore, Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global assert that Amstar Poland Fund GP only existed for allegations with respect to arbitration and decisions to hire outside counsel are non-actionable business judgments.  Finally, Amstar Poland Fund, Amstar Poland Fund GP and Amstar Global argue that the Court lacks personal jurisdiction over Amstar Bermuda and Amstar Poland Fund GP.

Plaintiffs argue that fraudulent concealment or equitable tolling tolled the fraudulent inducement claim.  Plaintiffs assert that the contract does not clearly disclaim fraud and that they made specific allegations with respect to fraud and that the alleged misrepresentations are actionable.  Plaintiffs also claim that the Court has subject-matter jurisdiction over gross negligence claims.  Plaintiffs contend that Amstar Bermuda and Amstar Group owe duties to Plaintiffs because they control Amstar Poland Fund.  Plaintiffs further argue that Amstar Poland

11

Fund GP alleged several grossly negligent acts after Amstar Poland Fund GP became Amstar Poland Fund's general partner. Finally, Plaintiffs maintain that the Court has personal jurisdiction over all defendants because of the Subscription Agreements' forum selection clauses.

## B. THE AMSTAR GROUP MOTION

Amstar Group argues that (i) the Court does not have personal jurisdiction over Amstar Group because it is a Colorado LLC headquartered in Colorado, (ii) the complaint does not plead that Amstar Group did anything to induce Plaintiffs and (iii) the complaint does not allege that Amstar Group was involved with any grossly negligent acts.

Plaintiffs argue that Amstar Group submitted to the Court's jurisdiction through the Subscription Agreements because Amstar Group directly benefitted from managing Amstar Poland Fund and that Amstar Group could foresee the forum selection clause binding them. Plaintiffs also assert that the complaint alleges Amstar Group committed fraud because all Amstar entities took credit for the alleged fraudulent misrepresentation. Plaintiffs further contend that Amstar Group owed duties to Plaintiffs because its representatives managed Plaintiffs' investments in Amstar Poland Funds and breached that duty by failing to perform any due diligence and raising preferred equity from investors with existing ties to Amstar. Finally, Plaintiffs argue that their claims are not barred by laches.

## IV.     STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably

12

conceivable set of circumstances.[59] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[60]

In considering a motion to dismiss under Rule 12(b)(6), the court generally may not consider matters outside the complaint.[61] However, documents that are integral to or incorporated by reference in the complaint may be considered.[62] "If . . . matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[63]

"Unlike the standards employed in Rule 12(b)(6) analysis, the guidelines for the Court's review of [a] Rule 12(b)(1) motion are far more demanding of the non-movant. The burden is on the Plaintiffs to prove jurisdiction exists. Further, the Court need not accept Plaintiffs factual allegations as true and is free to consider facts not alleged in the complaint."[64] "Plaintiffs have the burden to demonstrate a prima facie case establishing personal jurisdiction."[65] Plaintiffs "must plead specific facts and cannot rely on mere conclusory assertions."[66]

When personal jurisdiction is challenged by a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident defendant.[67] A motion under Rule 12(b)(2) presents a factual matter, not a

---

[59] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy*, No. 09C-09-136, 2010 WL 5825353, at *3 (Del. Super. Oct. 27, 2010).
[60] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).
[61] Super. Ct. Civ. R. 12(b).
[62] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).
[63] Super. Ct. Civ. R. 12(b).
[64] *Appriva S'holder Litig. Co. v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007).
[65] *AR Capital, LLC v. XL Specialty Ins. Co.*, 2019 WL 1932061, at *2 (Del. Super. Apr. 25, 2019).
[66] *Id.* (quoting *Mobile Diagnostic Grp. Holdings LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009)).
[67] *Werner v. Miller Tech. Mgmt. LP*, 831 A.2d 318, 326 (Del. Ch. 2003); *See Hornberger Mgmt. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 986 (Del. Super. 2000); *Boone v. Oy Partex AB*, 724 A.2d 1150, 1154 (Del. Super. 1997).

13

legal question alone.[68]  That factual question will concern the connection that the defendant has had, directly or indirectly, with the forum.[69]  The legal questions presented – whether that connection constitutes "doing business," whether it satisfies some aspect of a long-arm statute, or whether the assertion of personal jurisdiction conforms to conventional notions of fair play and substantial justice – cannot be resolved until the Court determines these predicate factual matters.[70]  A court cannot grant a motion under Rule 12(b)(2) simply by accepting the well pleaded allegations of the complaint as true[71] and the Court cannot restrict a Rule 12(b)(2) motion to the face of the complaint.[72]

## V.    DISCUSSION

### A.  AMSTAR POLAND FUND GP CONSENTED TO DELAWARE'S EXERCISE OF PERSONAL JURISDICTION BUT THE COURT MAY NOT EXERCISE PERSONAL JURISDICTION OVER AMSTAR GLOBAL AND AMSTAR GROUP.

"Plaintiffs have the burden to demonstrate a prima facie case establishing personal jurisdiction."[73]  Plaintiffs "must plead specific facts and cannot rely on mere conclusory assertions."[74]  Delaware courts apply a two-part analysis to determine whether personal jurisdiction exists over nonresident defendants.  "First, the Court must determine whether Delaware's long-arm statute is applicable.  Second, the Court must determine whether subjecting a nonresident defendant to jurisdiction would violate due process."[75]  To be subject to the Court's personal jurisdiction, the nonresident defendants must be subject to either (i) general jurisdiction based on activities within Delaware that are so continuous and substantial so as to

---

[68] *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 538 (Del. Ch. 1991).
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.* at 539.
[73] *AR Capital, LLC v. XL Specialty Ins. Co.*, 2019 WL 1932061, at *2 (Del. Super. Apr. 25, 2019).
[74] *Id.* (citing *Mobile Diagnostic Grp. Holdings LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009)).
[75] *Id.* (citing *Matthew v. Fläkt Woods Group SA*, 56 A.3d 1023, 1027 (Del. 2012)).  *See also Sessoms v. Richmond*, 2017 WL 6343548, at *2 (Del. Super. Dec. 8, 2017).

justify litigation wholly unrelated to those activities or (ii) specific jurisdiction based on the defendants suit-related contacts with Delaware.[76] The constitutional standard for specific personal jurisdiction remains whether the defendant purposefully established "minimum contacts" in the forum state.[77] Contracting with an out-of-state party is insufficient to establish minimum contacts in the out-of-state party's home forum.[78]

Delaware's long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant in a cause of action arising from the following specifically enumerated acts required of that defendant:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.[79]

To establish specific jurisdiction, Plaintiffs must show that "(1) the nonresident transacted some sort of business in the state; and (2) the claim being asserted arose out of that specific transaction."[80] This means that Plaintiffs must establish a nexus between their claims

---

[76] *See, e.g., Genuine Parts Co. v. Cepec*, 137 A.3d 123, 129-130 (Del. 2016).
[77] *International Shoe Co. v. Washington,* 326 U.S., 310, 316 (1945).
[78] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).
[79] 10 *Del. C.* § 3104(c).
[80] *Maloney-Refaie v. Bridge at School, Inc.*, 958 A.2d 881, 878 (Del. Ch. 2008); *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *3 (Del. Ch. Aug. 4, 2017).

and the nonresident's forum-related conduct.[81]  Furthermore, "[a] defendant can consent to a court's exercise of personal jurisdiction."[82]  Parties to a forum-selection clause consent to that forum's court's exercise of personal jurisdiction.[83]  "[N]on-signatory third party beneficiaries are bound by forum selection clauses in underlying contracts."[84]

Amstar Group, Amstar Global and Amstar Poland Fund GP each assert that they are not subject to Delaware's long-arm statute and that exercising jurisdiction would violate due process because the parties have no connection to Delaware and have conducted no Delaware business. Plaintiffs contend that all parties are third-party beneficiaries of the Subscription Agreements and are therefore bound by those Agreements' forum-selection clause.

      *i.*        ***Amstar Poland Fund GP is a third-party beneficiary of the Subscription Agreements.***

"A third-party beneficiary is an incidental beneficiary unless the parties to the contract intended to confer a benefit upon it."[85]  Third-party beneficiaries do not have to "be named and identified as an individual."[86]  Third parties may become bound by contracts "by either expressly or implicitly adopting the agreement," if the contract contemplates that non-signatories may adopt it.[87]  Adoption occurs in a variety of contexts, such as when successors adopt contracts of predecessors, or principals adopt the contracts made by their agents.[88]  Statements by non-signatories may establish express adoption.[89]  Non-signatories may implicitly adopt

[81]  *See Mobile Diagnostic*, 972 A.2d at 804.
[82] *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 801 (Del. Ch. 2020).
[83] *See Nat. Indus's. Grp. (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013).
[84] *Doe v. Cedars Academy, LLC*, 2011 WL 285598, at *1 (Del. Super. Jan. 19, 2011).
[85] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007).
[86] *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322 (Del. Super. 1973).
[87] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343-44 (Del. Ch. 2003).
[88] *Id.* at 348.
[89] *Id.* at 348-49.

contracts through conduct, for example, by accepting the benefits of a contract made for their benefit.[90]

The Former GP served as the Amstar Poland Fund's first general partner.[91] In November 2015, the Former GP exited the Amstar Poland Fund and the Amstar Poland Fund GP took over as general partner.[92] As the Amstar Poland Fund's general partner, Amstar Poland Fund GP received the benefit of the Amstar Poland Fund's agreements. Amstar Poland Fund GP was the successor in interest to the Former GP and therefore was a third-party beneficiary to the contracts between the Amstar Poland Fund and the Plaintiffs. Amstar Poland Fund GP is thus bound by the forum-selection clauses in the Subscription Agreements and is subject to Delaware's exercise of personal jurisdiction.

    *ii.*       *Amstar Group and Amstar Global are not third-party beneficiaries to the Subscription Agreements.*

Plaintiffs argue that representations in the Zlota Investment Presentation are evidence that Amstar Group is a third-party beneficiary to the Subscription Agreements.[93] For example, references to "Amstar" in the Zlota Investment Presentation refers to Amstar Advisers, LLC and Amstar Group.[94] However, even if the representations in the Zlota Investment Presentation suggested that Amstar Group was a third-party beneficiary to any agreements connected with the Zlota 44 Project, "the contract itself . . . must contemplate that non-signatories may adopt it."[95]

---

[90] *Id.* at 349.
[91] The Fund, the Fund GP, and Amstar Bermuda's Op. Br. in Supp. of their Mot. to Dismiss (Amstar Mot. Op. Br.) at 1.
[92] *Id.*
[93] Pls.' Answer. Br. in Opp. To Amstar Grp.'s Mot. to Dismiss ("Amstar Grp. Mot. Answer") at 7.
[94] Amstar Mot. Op. Br. Ex. A at 2 ("Amstar Advisers, LC and Amstar Group, LLC have historically shared the same investment management approach, invested in the same types of real estate properties and shared the same premises, personnel and processes, therefore these entities are collectively referred to as 'Amstar.' For the avoidance of doubt, statements within this presentation that refer to the statistics, history, employees, offices or other resources of 'Amstar' refer to the collective statistics, history, employees, offices or other resources of Amstar Advisers, LLC and its affiliates; these statements do not refer to any one of these entities independent from the others").
[95] *Am. Legacy Found.*, 831 A.2d at 344 (Del. Ch. 2003).

No provision in the Subscription Agreement suggests that the Amstar Group was meant to be a third-party beneficiary to the Agreement.

Similarly, Plaintiffs allege facts in the Complaint that Amstar Global was a third-party beneficiary to the Subscription Agreement.[96] The Court, however, cannot rely solely upon well-pled allegations of the Complaint as true when the Court's exercise of jurisdiction is challenged under Rule 12(b)(2).[97] Without evidence that Amstar Global is a third-party beneficiary, the Court may not exercise personal jurisdiction over Amstar Global. Therefore, the Court will **GRANT** the Amstar Motion with respect to Amstar Global.

### iii.      *Amstar Group is not closely related to the Subscription Agreement.*

"[E]ven if defendants are not parties to the agreement or third-party beneficiaries . . . they may be bound by the forum selection clause if they are closely related to the agreement."[98] A party may be closely related if it: (i) it receives a direct benefit from the agreement; or (ii) it was foreseeable that it would be bound by the agreement.[99] It is foreseeable that controlled entities would be bound by contracts entered by the entity that controls them.[100]

There is evidence that Amstar Group controls Amstar Poland Fund.[101] The Zlota Investment Presentation notes that managing personnel comes from "Amstar," defined within the presentation as both Amstar Advisers, LLC and Amstar Group.[102] Plaintiffs argue, therefore, that it was foreseeable that Amstar Group would be bound to the Subscription Agreements.[103] Delaware courts, however, find forum selection clauses binding "where the signatory controls

---

[96] *See* Pls' Answer. Br. in Opp. To Defs.' Mot. to Dismiss (Amstar Mot. Answer) at 29-30.

[97] *See Hart Holding Co. Inc.*, 593 A.2d at 538 (Del. Ch. 1991).

[98] *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (Citing *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009)).

[99] *Weygandt*, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009).

[100] *Id.* at *5.

[101] *See* Amstar Mot. Op. Br. Ex. A at 25-26.

[102] *See id.* at 2, 25-26.

[103] Amstar Grp. Mot. Answer at 8.

the non-signatory involved in the transaction."[104]  By contrast, here, the non-signatory controls the signatory. Thus, it would not be foreseeable that Amstar Group would be bound by the Subscription Agreements.  Amstar Group is not a third-party beneficiary of the Subscription Agreements nor is it closely related to the Subscription Agreement.  The Court also has no basis to exercise personal jurisdiction over Amstar Group independent of the Subscription Agreements. Therefore, the Court will **GRANT** the Amstar Group Motion.

### B.  PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM IS TIMELY.

Delaware's statute of limitations for a claim for fraudulent inducement is three years.[105] "A claim for fraudulent inducement accrues when the fraudulent statements were made, which must be on or before the date when the parties entered into the contract."[106]  Plaintiffs argue that their fraudulent inducement claim are timely under the tolling theories of fraudulent concealment and equitable tolling.[107]  The limitations period, however, is only tolled until "the plaintiff was objectively aware of the facts giving rise to the wrong i.e. on inquiry notice."

For tolling to apply, a plaintiff must plead that (i) defendants acted in an affirmative manner to conceal the cause of action from Plaintiffs and (ii) defendants knew about the alleged wrong to toll the statute of limitations at this motion to dismiss.[108]  Here, on June 8, 2018, Defendants told Plaintiffs that the Zlota 44 Project was 70% constructed at the investment time, and not 90% constructed as represented in the Zlota Investment Presentation.[109]  The Court can infer that Defendants knew they had made a materially false representation that induced

---

[104] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4454268, at *5 (Del. Ch. Sept. 18, 2019).
[105] *See* 10 *Del. C.* § 8106.
[106] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 11120934, at *4 (Del. Super. Dec. 29, 2015).
[107] Amstar Mot. Answer at 11-12.
[108] *Washington House Condo. Assoc. of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *18 (Del. Super. Aug 8, 2017).
[109] Compl. ¶ 66.

Plaintiffs to enter the Subscription Agreements. Therefore, at this stage, the Court will not dismiss the Plaintiffs' claim as time-barred.

## C. THE SUBSCRIPTION AGREEMENTS BAR THE FRAUD CLAIM.

"Delaware law enforces clauses which identify the specific information on which a party has relied and foreclose reliance on other information."[110] "[M]urky integration clauses, or standard integration clauses without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations."[111] The clause must reflect a clear promise by the plaintiff that it did not rely on statements made outside of the Agreement to make its decision to enter into the Agreement.[112]

The Subscription Agreements provide that the Plaintiffs are not "relying upon any other information . . ., representation or warranty by any Covered Person," outside of the Subscription Agreements.[113] The Subscription Agreements define "Covered Persons" as "[the Amstar Poland Property Fund], any Parallel Funds, the GP, the general partners of any Parallel Fund, the Investment Manager, their respective affiliates and their respective partners, members, directors, officers, employees, agents and representatives."[114] Plaintiffs allege that they were induced into the Subscription Agreements by statements in the Zlota Investment Presentation.[115] The Plaintiffs could not rely upon those statements because they are outside the Subscription Agreements. The Court thus finds that the Subscription Agreements' integration clauses bar the Plaintiffs' fraudulent inducement claim.

---

[110] *FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 858 (Del. Ch. 2016).
[111] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006).
[112] *See Anvil Holding Corp. v. Iron Acquisition Co., Inc.*, 2013 WL 2249655, at *8 (Del. Ch. May 17, 2013).
[113] Amstar Mot. Op. Br. Ex. B at 3; Ex. C at 3.
[114] *Id.* Ex. B at 1; Ex. C at 1.
[115] *See* Compl. 31-39.

## D. THE COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFFS' GROSS NEGLIGENCE CLAIM BECAUSE IT IS AN EQUITABLE CLAIM.

"A claim that a corporate manager acted with gross negligence is the same as a claim that he or she breached his or her fiduciary duty of care."[116] A claim for breach of fiduciary duty is "perhaps *the* quintessential equitable claim."[117] "A general partner generally owes fiduciary duties to the limited partners" but liability for fiduciary duties may be modified by the agreement.[118] Jurisdiction for a breach of fiduciary duty claim "lies exclusively within the Chancery Court even where the relief sought is purely monetary."[119]

Here, Plaintiffs allege that Amstar Poland Fund GP[120] breached its duty to Plaintiffs–limited partners in Amstar Poland Fund–by mismanaging the Zlota 44 Project.[121] Plaintiffs allege that Amstar Poland Fund GP mismanaged the Zlota 44 Project by (1) prioritizing the interests of certain investors to the detriment of the Plaintiffs when obtaining financing for the Zlota 44 Project, (2) mismanaging project timelines and costs for the Zlota 44 Project and (3) acting with gross negligence in managing arbitration costs related to Amstar Poland Fund.[122] Plaintiffs allege that the general partner Amstar Poland Fund GP acted with gross negligence when managing the limited partnership Amstar Poland Fund. This claim is, therefore, an action for breach of fiduciary duty of care, and the Court does not have subject matter jurisdiction to

---

[116] *Prospect Street Energy, LLC v. Bhargava*, 2016 WL 446202, at *7 (Del. Super. Jan. 27, 2016) (Citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2004 WL 2050527, at *6 (Del. Super. Sept. 15, 2004)).

[117] *QC Commc'ns Inc. v. Quartarone*, 2013 WL 1970069, at *1 (Del. Ch. May 14, 2013).

[118] *Richard B. Gamberg 2007 Family Trust v. United Restaurant Grp., L.P.*, 2018 WL 566417, at *8 (Del. Ch. Jan. 27, 2018) (Concerning an agreement limiting liability to actions constitution fraud, bad faith, willful misconduct or gross negligence).

[119] *Prospect Street Energy, LLC*, 2016 WL 446202, at *4 (Del. Super. Jan. 27, 2016).

[120] Plaintiffs also bring their Gross Negligence claim against Amstar Global and Amstar Group but the Court will dismiss the claims against those parties because the Court lacks personal jurisdiction over Amstar Global and Amstar Group.

[121] Compl. ¶ 99.

[122] *Id.*

hear it.  The Court will thus dismiss the gross negligence claim because the Court lacks subject-matter jurisdiction.

## VI.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Amstar Motion and **GRANTS** the Amstar Group Motion.  The Court finds that it may not exercise personal jurisdiction under the Delaware long arm statute and the U.S. Constitution over Amstar Global and Amstar Group. The Court also finds that it lacks subject-matter jurisdiction over the Plaintiffs' equitable claim for gross negligence of management.  Finally, although the Plaintiffs' claims are timely, the Subscription Agreements' integration clauses bar the Plaintiffs' fraudulent inducement claims.

Dated: August 31, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress