*OHI Asset HUD Delta, LLC v. REIT Solutions II, LLC, et al.*, No. 1720, Sept. Term, 2022. Opinion by Tang, J.

**COURTS – ACTIONS BY OR AGAINST NON-RESIDENTS – PERSONAL JURISDICTION IN – "LONG-ARM" JURISDICTION – BUSINESS CONTACTS AND ACTIVITIES – TRANSACTING OR DOING BUSINESS**

Foreign entities did not "[t]ransact[] any business" in Maryland within the meaning of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), and therefore were not subject to jurisdiction in Maryland as to disputes regarding promissory notes executed as part of sale of nursing facilities located in Florida and Mississippi. The foreign entities had no offices, did not solicit business, and had no registered agents in Maryland; they did not engage in any activities in Maryland to solicit, initiate, or negotiate the sale and leaseback of the facilities or the promissory notes; there was no indication that the entities signed the documents in Maryland or visited the State in connection with these agreements; and there was no evidence that any payments due under the notes were received in Maryland.

**CONTRACTS – CONSTRUCTION AND OPERATION – SUBJECT MATTER – LEGAL REMEDIES AND PROCEEDINGS**

Under the closely related doctrine, "a non-signatory to a contract may nonetheless be bound by that contract's forum-selection clause if the non-signatory is so 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Peterson v. Evapco, Inc.*, 238 Md. App. 1, 33 (2018). The forum selection clause in a contract applies to a non-signatory if: (1) the forum selection clause is valid, (2) the non-signatory is a third-party beneficiary of the agreement or closely related to the agreement, and (3) the claim at hand arises from the non-signatory's status related to the agreement.

Under the third requirement, Maryland company's claim for declaratory relief regarding its rights under promissory notes did not arise from non-signatory foreign entities' status in relation to separate subordination agreement that contained a Maryland forum selection clause. Accordingly, the Maryland forum selection clause in the subordination agreement did not confer jurisdiction over the non-signatory foreign entities under the closely related doctrine.

Circuit Court for Baltimore County
Case No. C-03-CV-21-002602

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1720

September Term, 2022
_____

OHI ASSET HUD DELTA, LLC

v.

REIT SOLUTIONS II, LLC, *ET AL.*
_____

Wells, C.J.,
Nazarian,
Tang,

JJ.
_____

Opinion by Tang, J.
_____

Filed: January 28, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

OHI Asset HUD Delta, LLC (the "appellant"), a Delaware limited liability company with its principal place of business in Maryland, filed a single-count complaint for declaratory relief in the Circuit Court for Baltimore County against five foreign entities: REIT Solutions II, LLC; SJB No. 2, LLC; JJT No. 1, LLC; Wet One, LLC; and DLF No. 3, LLC (the "appellees"). The appellees moved to dismiss, arguing that their contacts with Maryland were insufficient to establish personal jurisdiction. After a hearing, the court granted the motion and dismissed the complaint. The appellant appealed and raises two questions, which we have rephrased and consolidated into one:[1]

> Did the court err in granting the appellees' motion to dismiss for lack of personal jurisdiction?

> For the reasons explained below, we answer "No" and affirm the judgment of the circuit court.

---

[1] The questions presented by the appellant in its brief are:

1. Did the Trial Court Error [*sic*] in Granting Appellees' Motion to Dismiss for Lack of Personal Jurisdiction by Failing to Hold That the Notes, Master Lease, and Subordination Agreement Are So Closely Related or Entwined That the Forum Selection Clause Contained in the Subordination Agreement Confers Jurisdiction in Maryland in Connection with the Dispute Between OHI and Appellees?

2. Did the Trial Court Error [*sic*] in Granting Appellees' Motion to Dismiss for Lack of Personal Jurisdiction by Ignoring That the Master Lease- an Agreement (a) Signed and Acknowledged by Appellees, and (b) Upon Which Payment Under The Notes was Predicated- Was At All Material Times Administered in the State of Maryland, Thereby Establishing Jurisdiction in Maryland Over Appellees Pursuant to the Maryland Long-Arm Statute?

# I.

## FACTUAL BACKGROUND

The issue at hand may appear straightforward, but the details required to understand the parties' arguments and the analysis are complex. The story begins in 2006, when CSE Mortgage LLC ("CSE"), the appellant's predecessor, purchased several skilled nursing facilities located in Florida and Mississippi from the appellees. CSE then leased these facilities back[2] to certain affiliates of the appellees, which are not parties to this case.

In Section A, we summarize the agreements related to the sale and leaseback (the Purchase and Sale Agreement, the Promissory Notes, and the Master Lease). Section B explains the transaction by which the appellant became involved in the instant dispute (the assignment of the Promissory Notes). Finally, Section C discusses the assignment of the appellees' affiliates' leasehold to another non-party and an agreement that subordinates that non-party's payments for the sale of the leasehold interest to its rental payments due under the Master Lease (the Subordination Agreement).

---

[2] Several other entities were identified as purchasers and sellers in the sale transaction, as well as landlords in the subsequent lease agreement. Since these entities are not central to our discussion, for the sake of simplicity, we will refer to the purchasers and landlords of the nursing facilities as "CSE" and to the sellers as the "appellees."

## A.

## Sale and Leaseback of the Nursing Facilities

## 1. Purchase and Sale Agreement

On August 22, 2006, the appellees entered into a Purchase and Sale Agreement in which they sold 100% ownership of eighteen nursing facilities to CSE, a foreign limited liability company with its principal place of business in Maryland.

As part of the purchase consideration, CSE paid approximately $125,000,000 and issued five promissory notes ("Promissory Notes"), each in the amount of $4,000,000, payable to each appellee. The appellees were primarily established to receive payments due under these notes. They are foreign limited liability companies that do not maintain any office in Maryland, are not registered or licensed to conduct business in Maryland, and do not solicit business within the State. Additionally, no member of any of the appellees resides in Maryland.

In conjunction with the purchase, CSE leased the nursing facilities back to three entities affiliated with the appellees (collectively, the "appellees' affiliates")[3] pursuant to a Master Lease. According to the appellant's complaint, the nature of the affiliation between the appellees and their affiliates is "commonality by and among the equity owners of the [appellees'] [a]ffiliates and the equity owners of the [appellees]." Scott J. Bell, one of the

---

[3] The appellees' affiliates were Delta Health Group, Inc., Cordova Rehab, Inc., and Pensacola Health Trust, Inc.

members of appellee REIT Solutions II, LLC, served as president of each of the appellees' affiliates.[4]

As pertinent here, the Purchase and Sale Agreement gave CSE the right to make "promissory note adjustments" by offsetting any missed rent payments from the tenants (then the appellees' affiliates) against CSE's Promissory Note payments to the appellees. This is set forth in Section 2.10 of the Purchase and Sale Agreement:

> In the event that there is a default under the Master Lease such that Base Rent is not paid when due (the "Rent Roll Default"), CSE shall have the right to offset on a quarterly basis by written notice to the Sellers' Representative, the amount of such Rent Roll Default against any interest payments due and owing to Sellers under the Promissory Notes.

The record is silent as to the location of any negotiations relating to the Purchase and Sale Agreement. There was no evidence indicating that the Promissory Notes were negotiated or made in Maryland. The evidence shows only that the closing of the Purchase and Sale Agreement took place remotely in Washington, D.C., and that various documents related to the agreement were mailed from Florida and Mississippi to D.C. Additionally, CSE and the appellees executed the Purchase and Sale Agreement in California and Florida.

According to appellees' counsel at the motions hearing below, the agreement contains a Maryland choice of law provision but "not consent to jurisdiction in Maryland."

---

[4] According to his affidavit, Mr. Bell has lived in Florida for over 20 years.

### 2. Promissory Notes

On or about November 30, 2006, the appellees received the Promissory Notes, each with a principal sum of $4,000,000.[5] The notes required CSE to make quarterly interest payments to each of the appellees until December 21, 2021, when the principal sum under each note was to be due and payable. Each note, however, provided that the appellees' rights to receive the interest payments were subject to CSE's rights of offset under Section 2.10 of the Purchase and Sale Agreement, *supra*.

The Promissory Notes directed that "[a]ll amounts payable hereunder shall be payable in immediately available funds" at CSE's offices in Maryland, "unless [the appellees] provided [CSE] with wire transfer instructions, in which case payment shall be made in accordance with such instructions." It is undisputed that payments were made to banks in Florida and Mississippi. There is no evidence that any payments were received in Maryland.

All Promissory Notes include the same Maryland choice of law provision. However, the Promissory Notes do not contain a forum selection clause.

### 3. Master Lease

On November 30, 2006, the Master Lease took effect. CSE was the "Landlord," and the appellees' affiliates were the "Tenant." The Master Lease was executed in California and Florida. Mr. Bell, serving as president of the appellees' affiliates, signed the Master Lease on their behalf.

---

[5] The Promissory Notes were later amended, but the amendment does not affect the analysis below.

Under the Master Lease, the Tenant (then the appellees' affiliates) was required to make rental payments to the Landlord (then CSE) by electronic wire transfer. The Landlord's principal office is in Maryland. The Landlord's role in administering the Master Lease involved collecting rent; monitoring insurance, tax information, and the nursing facilities' financials; performing credit analyses; managing consents and amendments; and developing policies and procedures for new acquisitions.

Under the Master Lease, the Tenant consented to the nonexclusive jurisdiction and venue of any state or federal court having jurisdiction in Florida, or any county where a facility is located, for any action or proceeding to enforce or defend a matter arising from or related to the Master Lease, among other related documents.

**B.**

**Appellant Takes Assignment of the Promissory Notes**

Between 2009 and 2010, Omega Healthcare Investors, Inc. ("Omega"), a Maryland corporation, acquired 100% of CSE. Omega is the appellant's parent company.

In conjunction with the acquisition, by way of a June 29, 2010 Assignment and Assumption Agreement, the appellant took assignment of the Promissory Notes and became the obligor. CSE and the appellant then notified the appellees of the assignment of obligations under the Promissory Notes. Notwithstanding the assignment and assumption with respect to the Promissory Notes, CSE did not assign, and the appellant did not assume, any of CSE's rights or obligations under the Purchase and Sale Agreement.

The Assignment and Assumption Agreement provides that "[p]ayments under the [Promissory Notes] are sent to the [appellees] in accordance with the respective wire

6

instructions set forth on Exhibit D attached hereto." Exhibit D instructs the appellant to send each appellee's payments to banks outside of Maryland. Again, it is undisputed that payments were made to banks in Florida and Mississippi. There is no evidence that any payments were received in Maryland.

**C.**

**Subordination Agreement**

On December 4, 2008, before Omega acquired CSE, the appellees' affiliates sold and assigned their leasehold interests in the nursing facilities under the Master Lease to Gulf Coast Master Tenant I, LLC ("Gulf Coast"), a foreign corporation with its principal office located outside of Maryland. As a result, Gulf Coast became the Tenant under the Master Lease. As part of the consideration for the sale of the leasehold interest, the appellees' affiliates received promissory notes from Gulf Coast (the "Gulf Coast Notes"). The Gulf Coast Notes are *not* the same Promissory Notes described *supra*.

As part of this sale and assignment, a Subordination Agreement was executed on December 4, 2008. This agreement established that the Gulf Coast Notes would be subordinate to any debt owed by Gulf Coast to the Landlord under the Master Lease. Specifically, the agreement stated that the appellees' affiliates could not receive any payments related to the Gulf Coast Notes until the obligations under the Master Lease were fulfilled. The Subordination Agreement identified the appellees' affiliates to acknowledge their consent to the subordination. Mr. Bell, serving as president of the appellees' affiliates, signed the Subordination Agreement on their behalf.

7

On July 6, 2018, the Subordination Agreement was amended to permit Gulf Coast to make a one-time principal paydown of $5,000,000 of its indebtedness under the Gulf Coast Notes with the appellees' affiliates. By this time, the "Landlord" consisted of entities related to the appellant.[6] The "Lender" under the amended Subordination Agreement consisted of the appellees' affiliates. Mr. Bell executed the amended Subordination Agreement on behalf of the appellees' affiliates.

The amended Subordination Agreement contains both a Maryland choice of law provision and a Maryland forum selection clause, as follows:

> This Agreement, and all matters arising hereunder or related hereto, shall in all respects be interpreted, construed and governed in accordance [with] the substantive laws of [the] State of Maryland. Lender, Tenant, Lease Guarantors, and Landlord, each (i) submits to the jurisdiction of the state and federal courts of competent jurisdiction located in the State of Maryland for the purposes of resolving any litigation or proceeding hereunder or concerning the terms hereof . . . .

Since the amended Subordination Agreement supersedes the original, we will refer to it simply as the "Subordination Agreement."

## II.

### PROCEDURAL BACKGROUND

After the appellant took assignment of the Promissory Notes, a dispute arose regarding its obligation to make interest payments to the appellees under these notes. The

---

[6] The parties variously refer to these Landlord entities as "Omega Landlords" or "OHI-affiliated landlords."

8

appellant asserts that Gulf Coast failed and refused to pay rent and other amounts due beginning in 2019, constituting a default under the Master Lease.[7]

Accordingly, the appellant's Senior Vice President of Acquisitions and Development, Vikas Gupta, sent three letters to the appellees' representative, Mr. Bell, asserting that the appellant was entitled to offset interest payments due on the Promissory Notes because of Gulf Coast's default, pursuant to Section 2.10 of the Purchase and Sale Agreement. Over the course of several months, while Mr. Gupta was in Maryland, he and Mr. Bell communicated by both phone calls and text messages concerning Gulf Coast's default and the appellant's decision to offset, about fifteen to twenty times in total.

Due to Gulf Coast's alleged defaults under the Master Lease, the appellant informed the appellees, through Mr. Bell, that it would not be making certain interest payments due under the terms of the Promissory Notes. Ultimately, by letter dated August 2, 2021, the appellees declared the appellant in default with respect to the Promissory Notes.

**A.**

**Complaint for Declaratory Relief**

On August 11, 2021, the appellant filed a complaint for declaratory relief against the appellees in the Circuit Court for Baltimore County. It requested that the court "determine and adjudicate the rights and liabilities of the parties with respect to the [Promissory] Notes." Specifically, the appellant requested that the court render a declaratory judgment that:

---

[7] In October 2021, Gulf Coast filed for bankruptcy.

a. No Events of Default exist under the [Promissory] Notes;

b. [The appellant's] calculation and offsetting of interest payments to date as a result of Rent Roll Defaults was correct;

c. Unless the Rent Roll Defaults are paid and/or satisfied in full by Gulf Coast, the aggregate Rent Roll Defaults exceed all amounts which otherwise would be due and owing to [the appellees] under the [Promissory] Notes, inclusive of interest and principal payments; and

d. Unless the Rent Roll Defaults are paid and/or satisfied in full by Gulf Coast, the [Promissory] Notes are to be deemed fully satisfied and discharged in full as of December 31, 2021, as a result of the application of [the appellant's] offset right under the Purchase [and Sale] Agreement.

**B.**

**Motion to Dismiss for Lack of Personal Jurisdiction**

The appellees moved to dismiss the complaint for lack of personal jurisdiction, arguing that their contacts with this State were insufficient to satisfy the Fourteenth Amendment's due process requirement. After initial briefing by the parties, the court held a hearing and permitted limited, jurisdiction-related discovery and supplemental briefing on the motion.

The appellant opposed the motion to dismiss, arguing the appellees' contacts with this State were sufficient to satisfy Md. Code Ann., Courts & Judicial Proceedings ("CJP") § 6-103(b)(1) of Maryland's long-arm statute. The appellant contended that these requirements were satisfied for several reasons: first, the appellees sold their assets to CSE, a company based in Maryland; second, the Promissory Notes mandated payment in Maryland and were governed by Maryland law; and third, the appellees' representative, Mr. Bell, had multiple communications with Mr. Gupta, who resides in Maryland. Additionally, the appellant argued that the Promissory Notes, to which the appellees are

parties, and the Subordination Agreement, in which the appellees' affiliates consented to jurisdiction in Maryland, are interconnected through the Master Lease. Therefore, the appellant maintained that the forum selection clause in the Subordination Agreement, which binds the appellees' affiliates, also extends to the appellees with respect to disputes concerning the Promissory Notes.

The appellees responded that the underlying dispute is based solely on the Promissory Notes, rather than any other agreements. According to the appellees, the appellant was trying to create an illusion of purposeful contacts in Maryland by referencing "ancillary agreements." The appellees maintained that the Maryland forum selection clause in the Subordination Agreement is irrelevant to the dispute, which, in fact, arises from the Promissory Notes.

Ultimately, the court determined that it lacked jurisdiction over the appellees and granted their motion to dismiss. It explained that the appellant failed to show that the appellees transacted business in Maryland with respect to the Promissory Notes at issue. Accordingly, the court concluded that the appellees' contacts in Maryland were insufficient to support jurisdiction that comports with due process.

The appellant noted this timely appeal.

**III.**

**STANDARD OF REVIEW**

"The applicable standard of appellate review of the grant of a motion to dismiss for lack of personal jurisdiction is whether the trial court was legally correct in its decision to dismiss the action . . . ." *Bond v. Messerman*, 391 Md. 706, 718 (2006). "If factual

determinations are necessary in deciding the motion, the court may consider affidavits or testimony taken in connection with any hearing." *CSR, Ltd. v. Taylor*, 411 Md. 457, 471 (2009). The plaintiff "bears the burden of establishing personal jurisdiction" over the defendant by a preponderance of the evidence. *Pinner v. Pinner*, 467 Md. 463, 477 (2020).

## IV.

## DISCUSSION

On appeal, the appellant contends that the circuit court erred in determining it lacked personal jurisdiction over the appellees. The appellant presents two alternative theories in support of its argument. *First*, the appellant argues that the Promissory Notes, Master Lease, and Subordination Agreement are so closely related or entwined that the forum selection clause in the Subordination Agreement confers jurisdiction over the dispute on Maryland courts. *Second*, it asserts that the court has specific personal jurisdiction over the appellees under the State's long-arm statute because their interactions with Maryland constitute "[t]ransact[ing] any business" within the State. CJP § 6-103(b)(1).

We address the arguments in reverse order, and, as we will explain, neither theory is persuasive.

## A.

## Maryland's Long-Arm Statute

"Maryland has construed its long-arm statute to authorize the exercise of personal jurisdiction 'to the full extent allowable under the Due Process Clause.'" *Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 627 (2017) (citation omitted). The statute is found in CJP § 6-103 and provides:

12

(a) If jurisdiction over a person is based solely upon this section, he may be sued *only on a cause of action arising* from any act enumerated in this section.

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) *Transacts any business or performs any character of work or service in the State;*

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

CJP § 6-103(a), (b)(1)–(6) (emphasis added). The appellant contends that CJP § 6-103(b)(1) applies, conferring specific personal jurisdiction over the out-of-state appellees because they transacted business in this State.

Unlike general jurisdiction, under which a defendant is subject to suit anywhere it is considered "at home" (*i.e.*, an entity's place of incorporation or principal place of business), specific jurisdiction exists "only when the claim arises out of or relates to the defendant's contacts with the forum." *Stisser*, 234 Md. App. at 616–17 (citation modified). "The power of Maryland courts to exercise specific jurisdiction is confined to issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at

640 (citation modified); *accord Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 479 (2012) ("Specific personal jurisdiction cases arise where the cause of action arises from, or is directly related to, the defendant's contacts with the forum state, *i.e.*, the defendant's contacts with the forum state form the basis for the suit." (citation modified)).

In analyzing whether the appellees' contacts amount to transacting any business in Maryland within the meaning of the long-arm statute, we apply the following three-pronged inquiry:

> A defendant corporation is subject to specific personal jurisdiction only if it can be demonstrated that (1) the defendant has "purposefully directed its activities at residents of the forum"; (2) the plaintiff's claims "arise out of or relate to" those activities directed at the state; and (3) [] the exercise of personal jurisdiction would "comport with fair play and substantial justice" so as to be constitutionally reasonable.

*Stisser*, 234 Md. App. at 617 (citation omitted).

"[T]he quality and quantity of contacts required to support the exercise of personal jurisdiction will depend upon the nature of the action brought and the nexus of the contacts to the subject matter of the action." *Camelback Ski Corp. v. Behning*, 312 Md. 330, 338 (1988). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md. App. 481, 504 (2006) (citation omitted).

We have discussed specific personal jurisdiction in the context of cases involving contractual disputes:

> In the past, when a contractual dispute was involved, in deciding the issue of specific [personal] jurisdiction, we have combined our consideration of

14

the first two factors (whether the defendant "purposefully availed" itself of the state's benefits in conducting business and whether jurisdiction "arose" out of the cause of action), and have reasoned that the exercise of specific [personal] jurisdiction is proper when "the suit is based on a contract that has a substantial connection with the forum State." The mere residency of a party to the contract is not, by itself, sufficient for that State to assert jurisdiction. Nor are "telephone calls and correspondence with the plaintiff in the forum state" alone sufficient to establish a substantial connection.

When, however, the defendant has maintained a set of "continuing obligations" between [it]self and a resident of the forum state, [it] has "availed [it]self of the privilege of conducting business there, and because [its] activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require [the defendant] to submit to the burdens of litigation in that forum as well."

*Himes Assocs., Ltd. v. Anderson*, 178 Md. App. 504, 528–29 (2008) (internal citations omitted). We further note that CJP § 6-103(b)(1) does not require the defendant to have been physically present in Maryland. *See Bahn v. Chi. Motor Club Ins. Co.*, 98 Md. App. 559, 568 (1993). "A nonresident who has never entered the State . . . may be deemed to have 'transacted business' in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State." *Sleph v. Radtke*, 76 Md. App. 418, 427 (1988) (citation omitted).

As it did below, the appellant makes several claims regarding the appellees' business activities in Maryland, specifically related to the sale and leaseback of the nursing facilities and the accompanying Promissory Notes. It asserts that the appellees entered into a sale-leaseback transaction with CSE, which had its principal place of business in Maryland. The appellant's obligation to make interest payments under the Promissory Notes was dependent on receiving rent payments from the Tenant under the Master Lease, which was administered from Maryland. Furthermore, the appellant sent payments on the Promissory

15

Notes from Maryland. Each of the Promissory Notes includes a Maryland choice of law provision, and communications regarding the dispute about these notes took place while the appellant's representative, Mr. Gupta, was in Maryland.

We conclude that the circuit court did not err in determining that the appellees did not transact business in Maryland within the meaning of the long-arm statute. The appellees have no offices, do not solicit business, and have no registered agents in Maryland. Although CSE was based in Maryland when the sale and leaseback took place, there is no evidence that the *appellees* engaged in any activities in Maryland to solicit, initiate, or negotiate the sale and leaseback of the nursing facilities or the corresponding execution of the Promissory Notes. Additionally, there is no indication that the appellees signed these documents in Maryland or visited the State in connection with these agreements. *See, e.g.*, *Zavian v. Foudy*, 130 Md. App. 689, 701–02 (2000) (determining that the nonresident defendant athletes did not transact business in Maryland when they engaged a Maryland attorney; defendants did not purposely seek a Maryland agent, did not have "extensive negotiation[s]" over terms of the management contracts, never visited Maryland other than as members of sports team, and never sent payment to Maryland). Moreover, the nursing facilities that were the subject of the Purchase and Sale Agreement, the Promissory Notes, and the Master Lease are located in Mississippi and Florida. *See, e.g.*, *Weist v. City Cap. Corp.*, No. 10-CV-1557-DKC, 2010 WL 4455920, at *3 (D. Md. Nov. 8, 2010) ("[I]t is doubtful that Mutual Property's entering into contracts with a Maryland resident for the

16

management of properties located in Michigan could constitute transacting business in the State of Maryland.").[8]

The appellant's interest payments, the management of the Master Lease in Maryland, and later communications from Maryland to the out-of-state appellees were not purposeful contacts in Maryland that demonstrate that the *appellees* intended to avail themselves of the benefits and protections of Maryland law. *See, e.g.*, *Bond*, 391 Md. at 723 ("Generally, telephone calls and correspondence with the plaintiff in the forum state are not sufficient contact with the forum state to satisfy due process requirements."); *Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 371 (D. Md. 1993) (noting that a plaintiff may not "manufacture jurisdiction based upon its unilateral activity" (citation omitted)).

While courts have sometimes found that defendants transacted business in this State by paying or corresponding with a plaintiff located in Maryland, these cases typically also involved purposeful contacts with the State by the defendant, which are absent here. *See Jason Pharms., Inc. v. Jianas Bros. Packaging Co., Inc.*, 94 Md. App. 425, 433–34 (1993) (finding business transacted in Maryland where defendant contacted the Maryland-based

---

[8] Maryland Rule 1-104(b) provides that an unreported opinion issued by a court in a jurisdiction other than Maryland "may be cited as persuasive authority if the jurisdiction in which the opinion was issued would permit it to be cited as persuasive authority or as precedent." Federal Rule of Appellate Procedure 32.1(a) provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and issued on or after January 1, 2007." Accordingly, this Court may consider unpublished federal opinions issued on or after January 1, 2007 for their persuasive value. *Critzos v. Marquis*, 256 Md. App. 684, 695 n.4 (2023).

plaintiff, engaged in several weeks of negotiations over the price of purchasing machinery from plaintiff, entered a contract, and sent the down payment into Maryland); *Bahn*, 98 Md. App. at 570 (finding insurance company transacted business in Maryland by sending notices to plaintiffs in Maryland, contracting with them in Maryland, and receiving payments sent by plaintiffs from Maryland).

That leaves the choice of law provision contained in the Promissory Notes. The inclusion of the Maryland choice of law clause in the notes is not dispositive of the exercise of personal jurisdiction over the appellees. Instead, it "is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 (4th Cir. 2009). "[S]uch a [choice of law] provision standing alone would be insufficient to confer [personal] jurisdiction . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

In sum, we are not persuaded that the appellees "purposefully directed [their] activities at residents of the forum" or that the appellant's declaratory action "arise[s] out of or relate[s] to" activities directed at the state. Moreover, the appellees' contacts with Maryland are so limited that exercising personal jurisdiction over them would violate the concept of fair play and substantial justice.

**B.**

**Forum Selection Clause in Subordination Agreement**

The appellant maintains that the forum selection clause in the Subordination Agreement confers jurisdiction over the appellees in Maryland. Although the appellees

were not signatories to the Subordination Agreement, the appellant contends that the "closely related" doctrine supports its contention that the Maryland forum selection clause in that agreement binds the appellees. While the appellant addressed the connections between the appellees, their affiliates, and the relationship of the Subordination Agreement to the Promissory Notes and the Master Lease below, it did not specifically frame its arguments using the closely related doctrine, as it does for the first time on appeal. In any event, we conclude that the doctrine does not apply.

*Peterson v. Evapco, Inc.*, 238 Md. App. 1 (2018), is the seminal case in Maryland concerning the closely related doctrine. In *Peterson*, this Court held that "a non-signatory to a contract may nonetheless be bound by that contract's forum-selection clause if the non-signatory is so 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Id.* at 33 (citations omitted). We adopted the three-part test outlined by the United States Court of Appeals for the Third Circuit, which adopted the approach taken by Delaware courts:

> (1) [I]s the forum selection clause valid, (2) is the non-signatory a third-party beneficiary of the agreement or closely related to the agreement, and (3) does the claim at hand arise from the non-signatory's status related to the agreement?

*Id.* at 44 (citing *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015)). If the answer to all three questions is "Yes," then the exercise of jurisdiction over the non-signatory is permissible. *Id.*

The appellant focuses on the second element, arguing that the appellees are closely connected to the Subordination Agreement, which includes the Maryland forum selection

19

clause. The appellant links the appellees to their affiliates, which signed the Subordination Agreement, by noting that the two groups share the same legal counsel. Additionally, Mr. Bell represented the appellees in their subsequent dispute with the appellant regarding the Promissory Notes and signed the Subordination Agreement on behalf of the appellees' affiliates.

The appellant also asserts that the Promissory Notes, the Master Lease, and the Subordination Agreement are related, as suggested by the language in the Subordination Agreement ("all matters arising hereunder or related hereto"). Furthermore, the appellant emphasizes that the Master Lease is fundamental to the Promissory Notes and the Subordination Agreement since the payments associated with these were conditioned on Gulf Coast's rent payments under the Master Lease.

For purposes of this discussion, we assume without deciding that the first two elements of the closely related doctrine have been satisfied. The impediment for the appellant is that it has not satisfied the third element of the inquiry—whether "the claim at hand arise[s] from the non-signatory's status related to the agreement." *Peterson*, 238 Md. App. at 44.

The inquiry under the third element "is very similar to the question of whether the forum selection clause applies to [the underlying] dispute." *Id.* at 46 (quoting *Carlyle*, 779 F.3d at 218). As the Court of Chancery of Delaware explained:

> [T]he meaning of the third prong . . . is that the agreement containing the forum selection clause must also be the agreement that gives rise to the substantive claims brought by or against a non-signatory in order for the forum selection clause to be enforceable against the non-signatory. This appears to be a way of cabining the number of forum selection clauses a party

20

needs to worry about in a complex transaction by preventing a litigant from binding a non-signatory to an agreement that was part of the transaction at issue, but that was so unrelated to the non-signatory that no substantive claim against the non-signatory could arise from it.

*Weygandt v. Weco, LLC*, C.A. No. 4056-VCS, 2009 WL 1351808, at *4 n.15 (Del. Ch. May 14, 2009);[9] *see also River Valley Ingredients, LLC v. Am. Proteins, Inc.*, C.A. No. 19-2358-RGA, 2020 WL 2220148, at *5 (D. Del. May 7, 2020) (citing *Weygandt*, explaining that the third element relates to whether the claim being asserted against a non-signatory in the action arises from the agreement containing the forum selection clause); *see, e.g.*, *Carlyle*, 779 F.3d at 220 (concluding that plaintiff's claims did arise from an agreement containing a forum selection clause because, "although the releases plaintiff seeks to enforce were part of later agreements, the defendants would not have any claims, nor would plaintiff need to seek release from any claims, but for the original agreement that contains the forum selection clause" (citation modified)); *Peterson*, 238 Md. App. at 46–47 (explaining that the claims against a non-signatory arose from the confidentiality agreement containing the forum selection clause, where the claims were "entirely derivative of [the signatory's] violation of" the non-compete condition contained in the same agreement).

Here, the dispute did not stem from the Subordination Agreement, which contains the Maryland forum selection clause, and the appellant does not seriously argue otherwise. As discussed, the Subordination Agreement pertains to the sale and assignment of the appellees' affiliates' leasehold interests to Gulf Coast. Its primary purpose was to prioritize

---

[9] *See* Md. Rule 1-104(b). In Delaware, unreported cases have precedential value and are citable without limitation. *See* Del. Sup. Ct. Rule 14(b)(vi)(B)(2); *MAS Assocs., LLC v. Korotki*, 465 Md. 457, 479 n.11 (2019).

Gulf Coast's payment obligations as Tenant under the Master Lease over its payment obligations as borrower under the Gulf Coast Notes. In other words, the Subordination Agreement and the Promissory Notes differ in subject matter and create distinct obligations for different parties.

The appellant's claim for declaratory relief arises from the Promissory Notes. Indeed, the appellant expressly requests in its complaint that the court "determine and adjudicate the rights and liabilities of the parties *with respect to the [Promissory] Notes.*" (Emphasis added.) While the existence of the Subordination Agreement was a fact in the chronology of events leading to the underlying dispute, the appellant is not seeking a declaration of any rights or liabilities under this agreement. For the reasons stated, the forum selection clause in the Subordination Agreement does not confer jurisdiction over the appellees in this case under the closely related doctrine.[10]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[10] The appellant cites *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054 (D. Minn. 2008), and *First Financial Management Group, Inc. v. University Painters of Baltimore, Inc.*, C.A. No. 11-5821, 2012 WL 1150131 (E.D. Pa. Apr. 5, 2012), to support its argument that the appellees are closely related to the Subordination Agreement. However, we do not need to discuss these cases further, as we assume for the sake of discussion that the second requirement of the closely related doctrine has been met. The cited cases do not assist the appellant with the third requirement, as the claims in these cases stemmed from agreements containing a forum selection clause, unlike in the instant case.